# Charleston.

## MOORE v. WHEELER.

### Decided April 28, 1877.

1. A decree will not be reversed for want of a replication to the answer when the defendant has taken depositions as if there had been a replication.

2. An answer alleging new matter, constituting a claim to affirmative relief in the suit in the purview and meaning of the thirty-fifth section of chapter one hundred and twenty-five of the Code, was intended simply to be allowed in lieu of a cross bill in the cause as to such new matter, and not to make any other change in the practice as to the pleadings in courts of equity.

3. Subject to the rights of joint creditors, where an account is taken at winding up of a partnership between partners, each partner is entitled to be allowed against the other, every thing he has advanced or brought in as a partnership transaction, and to charge his copartner in the account with what he has failed to bring in, and with what he has abstracted from the joint funds, beyond his just proportion, and nothing will be considered as the share of any of them, but that proportion of the residue, to which each, on a balance of the account so taken may be ascertained to be entitled.

4. In the absence of any positive stipulations, or the abandonment of them by the acts and conduct of the parties, courts of equity, as between the partners, will commence with the last stated account between them and deem that conclusive, upon

all antecedent transactions, unless, indeed, some gross and palpable error or fraud is shown.

5. A case in which it was error to decree in favor of one partner against another for money on a bill to settle and dissolve a partnership without first applying properly the partnership assets. [See opinion of the Court.]

Appeal from, and *supersedeas* to, decree of the circuit court of Kanawha county, rendered on the 24th day of June, 1874, in a cause then pending in said court, wherein Joseph Moore was plaintiff, and S. C. Wheeler was defendant.

The appeal was granted upon the petition of the defendant, S. C. Wheeler.

The case is sufficiently stated in the opinion of Haymond, Judge.

The Hon. Joseph Smith, Judge of the seventh judicial circuit, presided at the hearing below.

*Thomas L. Broun,* for appellant:

No partner has any remedy against another partner until there has been a full and final settlement of the partnership business. Advances made by one partner in excess of another, or moneys abstracted from the firm by one partner in excess of another, do not constitute debts until the partnership is wound up; neither partner has any remedy against, or liability to, the other partner, for payment from one to another of what may have been advanced or received until the partnership affairs are wound up. A partnership is not determined, not finally wound up, until the partnership assets are collected, the debts paid, and the property distributed. Story Part., sec. 348 and n.

Partnership property must *first* be applied to satisfy partnership debts, including debts due by the partnership, to either of the partners. 1 Gratt., 396.

The court should have directed the partnership property to be sold, and the proceeds paid to the plaintiff, before rendering a decree in favor of the plaintiff, against

the defendant. 8 W. Va., 303; Sm. Merc. Law, 65; Coll. Part., sec. 354.

*T. B. Swann*, for appellee:

The report of a commissioner, when passed upon by the court below, will not be reversed by an Appellate court, unless grossly erroneous. 1 U. S. Dig., 294, 355-7-8.

HAYMOND, JUDGE:

In October, 1873, the plaintiff filed his bill in the circuit court of the county of Kanawha, in which he alleges that he entered into a partnership with the defendant, on the 22d day of May, 1872, by the terms of which the plaintiff was to cut, saw and raft timber on Coal river and its tributaries for the Chesapeake and Ohio railroad, the defendant to pay an equal portion of the necessary expenses, and the profits were to be divided between plaintiff and defendant. That they continued the business, and had regular settlements until the last of January, 1873, when they had a full and final settlement of all their partnership business up to that date; that they continued on, however, in said business, plaintiff doing the work, furnishing the labor and money (the defendant attending to his private business). That defendant has received monies and effects of the partnership, and among other things, that defendant perpetrated a fraud on the plaintiff, on the 29th day of May, 1873, in procuring some $419.51 of social money under false pretenses in the bill alleged and has acted in bad faith in declining to have a full and final settlement with plaintiff, and in refusing to pay him the money he so procured from Huntington and Fanchet for timber belonging to the partnership. Plaintiff further alleges that since said 29th day of May, 1873, the defendant has taken no interest in the partnership business; that he has furnished no money to carry on said business; declines to have stated settlements, and has violated his terms of the articles of copartnership between them.

1877.
January Term.

Moore
v.
Wheeler.

And plaintiff prays that the defendant be made a party defendant to the bill, &c.; and a decree dissolving the said partnership be made, and that the defendant be required to make settlement of the partnership business, and to pay plaintiff what money may be found to be due him on said settlement, and for such other and further relief as in equity may seem right. The defendant filed his answer to the plaintiff's bill, in which he admits that in the spring of 1872 the plaintiff and he did agree to cut, saw and raft timber on Coal river, the expenses and profits of which business each partner was to share alike. In a word, he does not controvert in his answer, the contract of partnership and the purposes thereof, as alleged in the bill. But he avers, that plaintiff entered into a contract with H. E. Huntington about said partnership business, in which contract the defendant was an equal partner with the plaintiff, though the name of defendant did not appear in the Huntington contract. He also admits that plaintiff and he had a settlement in January last, but denies that they had any settlement in May, 1873, as alleged in the bill, and says that he and plaintiff could not agree on several matters of their respective accounts, as presented to each other in May, 1873. Defendant also alleges that he has always been ready and willing to settle said partnership business, and has never refused to do so, and that upon full settlement of all matters between them, he believes it will be found that there is nothing due plaintiff, but if there should be, he is ready and willing to pay to plaintiff whatever that may be. He further avers that there are three rafts on Coal river, worth about $90 each, which is the property of the firm, but in charge of the plaintiff, and is held in his individual name, and subject to his control. Also, that Huntington & Fanchet have retained ten per cent. in their hands of the value of the timber furnished them by the firm, which amounts to about $200, which is in complainant's name and under his control. He also denies that he has practiced any fraud

on plaintiff or procured money under false pretenses, or has acted in bad faith, or has, in any manner, violated the agreement of partnership. But, on the contrary, he avers that the property now under the sole control of the plaintiff, is amply sufficient to satisfy in full plaintiff's interest in the said firm. He also denies that he has taken no interest in the partnership business since May last (1873), but he avers that he has always furnished his portion of the labor and money required to carry on the said partnership business, according to the terms of the partnership agreement. He also further denies each and all the allegations of fraud, of procuring money under false pretenses, of acting in bad faith, &c., and avers that he is ready and willing to have a full and fair settlement with plaintiff. He concludes his answer by praying to be hence dismissed, &c.

At the November term, 1873, the cause was referred to a special commissioner, to take, state and settle the partnership account between the parties, and report the amount, if any, that may be due either of the parties from the other, and what may be due from other persons, and such other matter as may be deemed pertinent. The special commissioner filed his report, which is dated March 16, 1874, in which he reports that the defendant is indebted to the plaintiff in the sum of $304.00. He also reports that there is due the firm of Moore & Wheeler the sum of $349.31.

To this report the counsel for the defendant filed nine several exceptions. It appears in substance that the court directed that a day be given to the defendant to appear before the commissioner and produce any evidence he might have in relation to the account formerly taken. On the 17th day of June, 1874, the commissioner filed his report, which, I think, may properly be called a supplemental report. The commissioner, in his supplemental report, says that " after a careful review of the testimony taken, which is filed herewith, your commissioner is of opinion that the defendant, Wheeler, is en-

titled to a credit of $8.00, which appears from the testimony of the plaintiff, Moore." The commissioner gives the defendant no other credit. Each party took depositions before the commissioner to support their respective claims. The commissioner also says in his supplemental report that the seventh item in Wheeler's account is $80, which he charges against plaintiff. Only one-half should be charged to plaintiff and the other half to the defendant. He also says "the item for 'the amount due from Huntington' is for proceeds of the timber made to Huntington & Fanchet, agents for the Chesapeake & Ohio Railroad Co." The defendant, Wheeler, filed, by his counsel, sundry exceptions to the supplemental report of the commissioner, and afterwards the cause was heard by the court on the " bill and exhibits, the answer of the defendant, the report of Master Commissioner Joseph Ruffner, and the supplemental report of said commissioner, which the defendant, at his own request, was permitted during this term to have taken in the cause, but at his costs, and also upon the exceptions taken to said reports by the defendant, was argued by counsel. On consideration whereof, it is hereby adjudged, ordered and decreed, that the partnership heretofore existing between the parties to this suit be dissolved, and that the exceptions to said report be overruled, and that the report of said master commissioner, as amended by said supplemental report, be confirmed. It is further adjudged, ordered and decreed, that the said complainant, Joseph Moore, recover from the defendant the sum of $294.00, the amount found to be due him by said commissioner, and that unless he pay the same within sixty days from the rising of this court, the sheriff of Kanawha county do proceed to sell according to law, so much of the property levied on by him by virtue of the order of attachment in this cause as will satisfy the within decree, together with the costs of suit, including $30 attorney's fee, allowed by law. It is ordered that the said defendant, S. C. Wheeler, recover the one-half of a certain judgment re-

covered at this term of this Court by the complainant against the Chesapeake & Ohio Railroad Co." It does not appear by the record that a replication was ever filed by the plaintiff to defendant's answer. But it does appear that the defendant, and in fact, both parties took depositions in the cause as though there had been a replication. The fourth section of chapter 134 of the Code of 1868, provides that "No decree shall be reversed tor want of a replication to the answer when the defendant has taken depositions, as if there had been a replication ; nor shall a decree be reversed at the instance of a party who has taken depositions for an informality in the proceedings, when it appears that there was a full and fair hearing upon the merits, and that substantial justice has been done." *Forqueran v. Donally,* 7th W. Va. R., 114. *The Coal River Navigation Company, et al. v. William H. Webb,* 3d W. Va. R., 438. *Joseph Martin v. Michael Rellehan,* 3d W. Va. R., 480. Under the statute above quoted, the said decree will not be reversed because no replication was filed to the answer of the defendant. But it is claimed by the counsel for the appellant that the answer filed alleges new matter, constituting a claim for affirmative relief in the cause, and that as there is no reply in writing controverting such new matter, the answer as to such new matter must be taken as true for the purposes of the suit, under the provisions of the 35th and 36th sections of chapter 125 of the Code. I don't think any of the matter set up in the answer is such new matter as is contemplated by said 35th section. The language of the section is " The defendant in a suit in equity may, in his answer, allege any new matter constituting a claim for affirmative relief in such suit, in the same manner and with like effect as if the same had been alleged in a cross bill filed by him therein ; and in such case, if the plaintiff claim to controvert the relief prayed for in the answer, he shall file a reply in writing denying such allegations of the said answer as he does not admit to be true, and stating any facts constituting a

defense thereto." The new matter constituting a claim for affirmative relief in the suit referred to in this section is such new matter as the defendant could not have the benefit of ordinarily, by answer filed in the cause before said section took effect, and such as he might avail himself the benefit of by cross bill filed in the cause. The answer filed in this cause contains no matter of any kind which defendant could not have the benefit of in the cause without a cross bill before said section took effect. An answer alleging new matter constituting a claim to affirmative relief in the suit, in the purview and meaning of the section under consideration, was intended simply to be allowed in lieu of a cross bill in the cause as to such new matter, and not to make any other change in the practice as to pleadings in courts of equity. *Vanbibber v. Beirne et als.*, 6 W. Va. R., 168. The record fails to disclose that the firm of Moore & Wheeler owes any debts, and it equally fails to show that either party claimed or suggested in the court below that said firm owed any debt, or debts, outside of what plaintiff and defendant each claim is due them. I infer from these facts that no debt, or debts, is due from the partnership to third persons, though such possibly may not be the fact. The first error assigned by the defendant, Wheeler, in his petition, is " it was error to render a decree in favor of one partner and against another until the firm assets and property are disposed of." It appears by the report and supplemental report of the commissioner that there is a debt due from the Chesapeake & Ohio Railroad Company of $349.31, and it would seem from the decree of the 24th day of June, 1874, that the plaintiff in his own name had recovered judgment against said railroad company for a debt which, in fact, belonged to the partnership, but the date or amount of that judgment does not appear. The presumption from what appears in the record in relation to this judgment is, that it is for the debt mentioned in said reports, though the amount may vary to some extent. It appears that the

contract under which this debt accrued was made by the plaintiff with the agents of said railroad company, though the contract was for the benefit of said partnership, and the timber furnished the railroad company under the contract, and for which the debt is due, was the property of said firm of Moore & Wheeler. This state of facts in relation to this debt seems to be admitted by both parties. This debt or judgment against the railroad company, under these circumstances, is in equity, a debt due said firm and must be regarded as part of the social effects of said partnership, and should be so applied to the extent it may be realized. It does not appear by the record whether the railroad company is solvent or otherwise, or whether this debt can or will be made available. This Court, in the absence of any evidence or data upon that subject, is not authorized to presume that the debt cannot be realized or made available.

It also appears from the supplemental report and evidence filed therewith, that there is on Little Coal river, or was at the date of the report, near the mouth of Ivy creek, a considerable amount of timber, worth some $80. One witness says the amount of said timber was sufficient to make two good rafts. This timber, it appears, and without dispute, is a part of the social effects and assets of said firm. It also appears that this timber is under the control of the plaintiff. It clearly appears that this timber, nor its value, has not been disposed of in this case in any manner by the decree of the court, but still remains undisposed of so far as appears by the record. If plaintiff has disposed of it, the defendant should have credit for his half of it, and it should be deducted from the amount which is due from him to plaintiff. If it has not been disposed of, the defendant should have the benefit in this suit of his interest therein, whatever it may amount to.

The partnership in this case does not appear to have been formed for any definite period. Gow, in his work on Partnership, top page 257, second American edition,

says: "On general principles, therefore, it is the practice, in the instance of a trading partnership, clearly dissolved, or where the right to a dissolution is manifest, at once to put an end to the trade, by directing a sale by interlocutory, order or motion, when that measure is required by the evident interest of the parties." On pages 258 and 259, the same book, it is said: "The joint property being disposed of, the joint creditors have the primary claim upon the fund constituted by its produce. * * It is also for the 'sake of the partners themselves that the joint creditors are to be satisfied; because in taking the account between the partners, there is that equity affecting each, that he shall be discharged from his liability in respect to partnership debts, before any division of the funds liable to these debts, takes place between the partners. Besides, it is very possible, and it often happens in fact, that the partners have different interests in the surplus, and out of that, in order to the administration of justice to the partners themselves, a necessity arises, that the partnership debts must be paid, otherwise the surplus cannot be distributed according to equity. Partnership effects, therefore, or their produce, must be applied in liquidation of the outstanding debts, before any of the partners can claim anything for his share or debt. * * * Independently, however, and subject to the rights of joint creditors, when an account is taken between partners after a determination of the partnership, each partner is entitled to be allowed against the other, everything he has advanced or brought in as a partnership transaction, and to charge his copartner in the account with what he has failed to bring in, and with what he has abstracted from the joint fund, beyond his just proportion; and nothing will be considered as the share of any of them, but that proportion of the residue, to which each, on a balance of the accounts so taken, may be ascertained to be entitled." See also 1 Gratt., cases of *Christian v. Ellis and als: Same v. Webb and als.; Same v. Neville and als.*, p. 396, Story

Part., pp. 996, 497, note 4. Story, in his work Part., at page 500, section 350, says : " In relation to the real estate of the partnership, it seems to have been generally considered, that it ought to be decreed to be sold, as the only just and fair way (in the absence of any other agreement between the parties) to ascertain its true value. The same rule would seem equally to apply to all cases of chattels and other personal property or effects, which are not capable in themselves of being exactly divided, without reference to their position and absolute value. As to chattels and other personal property, capable of such a division, the same rule, as to a sale, may not necessarily and under all circumstances apply. But the true doctrine of courts of equity on this subject would seem to be, in all cases, to decree a sale of the partnership property, rather than a division thereof in kind, whenever a sale would be most beneficial for the interest of all the partners." Coll. Part., 4th American from the 2d English Edition, sec. 321. In note four to this paragraph it is said : " In *Fereday v. Weightwick*, 1 Tamlyn, 261, Sir Lord Leach, Master of the Rolls, remarked : ' It is a principle, that all property, whether real or personal, is subject to a sale on a dissolution of the partnership.' Mr. Chancellor Kent lays down the same doctrine. 3 Kent (5 Ed.) 64. Mr. Gow insists on the same. Gow, Part., (3d ed.) 234. In *Henen v. Cosmesnil*, 7 Dana, 203, certain uncollected debts were divided between the partners by order of the court, so as to effect an entire settlement of the concern." In note 1, on page 501 of Story Part., it is said, " Mr. Gow (Gow on Partn., ch. 5, sec. 2, pp. 235, 237, 3d edit. ; Id., p. 252, 253), insists upon the right of any partner to insist on a sale in all cases " and that he says (p. 234) ; " When the common property is ascertained, either party may insist upon a sale of the whole concern. The rights of the partners respectively are then precisely equal ; each may require the whole concern to be wound up by a sale, and

a division of the produce. One partner has no claim upon his individual proportion of a specific article, nor can he insist upon an exclusive right in it; but he is entitled only to a general arrangement of the partnership concerns, and for that purpose to an account of the produce of the aggregate joint effects. He cannot separate his share from the bulk of the joint property, nor compel his co-partner to accept what, according to a valuation, his interest is worth. That is not the mode in which a court of equity winds up the concerns of a partnership. But in every case, in which that court interferes in closing the transactions of a firm, it directs the value of the whole of the joint property, whether real or personal, to be ascertained, in the way in which it can be best ascertained, viz: by a sale and its conversion into money." Without attempting to lay down any general rule as to the selling of the joint personal property of a copartnership, it seems to me, under the circumstances of this case, as shown by the record, the court below erred in giving a personal decree against the defendant in favor of the plaintiff for money, as was done in this case, at the time it was done. The court should have informed itself, by some proper mode, before making such decree, as to whether said debt or judgment against the Chesapeake and Ohio Railroad company was available, or would be in a reasonable time, and if so available, to have caused it to have been collected by a receiver, and the proceeds, so far as necessary, to be applied to what is or may be due the plaintiff from the defendant, if anything, on the settlement of the partnership account. And also the court should have caused a receiver to have sold said timber, and applied the proceeds thereof in the same manner. It seems that if said Chesapeake and Ohio railroad debt is available, and said timber and logs were sold at the estimated value, that the defendant's half of the proceeds thereof would go very far towards liquidating the amount of debt ascertained in said decree to be due

from defendant to plaintiff, if that ascertainment be correct, which I don't think is entirely so, for reasons hereinafter stated. The ascertainment of the $294 in favor of plaintiff against defendant, was arrived at by deducting the $8.00, which the commissioner says in his supplemental report the defendant is entitled to be credited for, from the $304, ascertained in his original report. But deducting the $8 from the $304 leaves a balance of $296 instead of $294. But I do not think from the evidence appearing in the record that $296 is the correct balance. The commissioner, in his report, allows the plaintiff $50 as against the firm for an injury done one of his oxen while employed by and in the use of the firm. On considering the whole evidence I think that $25 is sufficient to compensate plaintiff for the injury, and that it was error to allow $50 therefor. I am also of opinion that the report and supplemental report of the commissioner is in all other respects correct. Adopting this view, then, deducting one-half of $25 (the overcharge), which is $12.50, from the $296 aforesaid, would leave the amount due from from defendant to plaintiff at the date of said decree—$283.50 instead of $294. It appears that plaintiff and defendant had a settlement of their partnership business on the 25th day of January, 1875, up to that time, and the defendant claims that the commissioner erred in not allowing him an item of $40 for property bought from C. &O. R. R. Co. But it appears that this item accrued prior to said settlement. In the absence of any positive stipulations, or the abandonment of them by the acts and conduct of the parties, courts of equity, as between the partners, will commence with the last stated account between them, and deem that conclusive upon all antecedent transactions, unless, indeed, some gross and palpable error or fraud is shown. If there has not been any stated account or any positive or implied settlement at any period, then, of course, the accounts must be taken from the period of the commencement of the partner-

1877.
January Term.

Moore
v.
Wheeler.

ship. Story Part., §349, pp. 493, 494. Coll. Part., 4th Am., Ed., § 318, p. 296. There is not proof that this item was omitted from said settlement by any error or fraud, but there is evidence in the record showing that said item was embraced in a former settlement made between the parties. The commissioner did not err in rejecting said $40 item. And taking the whole evidence together, I do not think the commissioner erred in his original or amended report as to the amount he ascertained to be due from the defendant to plaintiff, except as to the injury done to the plaintiff's ox as above stated and shown. And correcting the commissioner's reports in that respect and to that extent, the amount due plaintiff on account of said partnership transaction is $283.50, exclusive of interest.

For the foregoing reasons the said decree of the circuit court of the county of Kanawha, rendered in this cause on the 24th day of June, 1874, must be reversed and annulled, and the appellant recover against the appellee his costs in this Court expended. And this Court proceeding to render such decree as said circuit court should have rendered in the cause, it is adjudged, ordered and decreed that the cause be remanded to the said circuit court for such further proceedings therein, there to be had, as are in accordance with the principles settled by this opinion, and further, to be proceeded in according to the rules and regulations governing courts of equity.

Judges Moore, Green and Johnson concur in the foregoing opinion.

DECREE REVERSED and cause remanded.