# CHARLES TOWN.

MARTIN v. KESTER.

Decided September 7, 1901.

1. INJUNCTION—*Answer—Cross Bill—Parties.*

　　M. conveyed two hundred and eleven and one-half acres of land in trust to secure K. the payment of a note for five thou-

sand dollars, the note containing a provision that it was to be subject to any credit to which the maker might show he had paid on said claim or debt, upon a fair adjustment of all matters between them. D., the trustee, proceeding to sell the land under said deed of trust was enjoined by M. on the ground, among others, that he did not owe K. anything on settlement; and prayed for a settlement to be had between them to ascertain his indebtedness, if anything, to K. Defendants filed an answer in the nature of a cross bill alleging prior liens on said land by judgments against M., and making the judgment creditors of M. parties to the suit, and praying for a convention of the lien creditors and to ascertain the amounts and priorities of the liens. *Held,* the court did not err in permitting the answer and cross bill to be filed. (p. 649).

2. COURT—*Jurisdiction—Parties—Special Commissioner.*
    In such case where the court has taken jurisdiction to make settlement between the parties and to ascertain the liens and priorities thereof and to decree sale of the land to pay the liens, it is proper to appoint a special commissioner to execute the decree of sale. (p. 654).

3. COURT'S DISCRETION—*In Appointments.*
    And in such case the court will exercise a sound discretion in the appointment of such special commissioner, whether it be the defendant trustee or another person. (p. 659).

4. ERROR TO REVERSE MUST BE PREJUDICIAL.
    It is not sufficient to reverse a decree that it is erroneous. Error must appear to the prejudice of the party complaining thereof. (p. 660).

Appeal from Circuit Court, Harrison County.

Action by Charles T. Martin against Samuel O. Kester and others. Decree for defendants, and plaintiff appeals.

*Modified.*

W. SCOTT, for appellant.

LEWIS C. LAWSON, for appellees.

MCWHORTER, JUDGE:

On the 7th day of May, 1888, Charles T. Martin executed to Lemuel D. Jarvis, trustee, a deed of trust on a tract of two hundred and eleven and one-half acres of land in Harrison County, to secure Celia Kester the payment of a note of five thousand dollars of even date with the trust deed. Afterwards Sherman C. Denham was substituted as trustee in place of Jar-

vis, who had died. Trustee Denham advertised to sell the land under the trust deed when Martin filed his bill in the circuit court of Harrison County enjoining the sale, on the grounds that the title to the tract of land was not in plaintiff when he executed said deed of trust, and that the trust deed was void for uncertainty as to the debt secured; that whether plaintiff owed anything under said trust depended on a settlement of many transactions and many accounts that were still unsettled between the parties; alleging that he was not indebted to Celia Kester one cent on any account; that he did not make such note as set out in the trust deed, and praying for a construction of a deed of trust dated September 11, 1839, made by his ancestor William Martin, to ascertain what interest plaintiff or his children had thereunder in said tract of two hundred and eleven and one-half acres of land, and also for a settlement of said transactions and accounts to ascertain his true indebtedness, if anything, to Kester. The bill was answered, depositions taken, and amount of indebtedness of plaintiff ascertained, and a decree for sale of the tract of land entered, from which plaintiff appealed, the decree was reversed, the defendants in their answer in the nature of a cross bill having asked for affirmative relief affecting parties not before the court and failing to make them parties, and were required to bring such parties in. See *Martin* v. *Kester,* 46 W. Va. 438. The cause was remanded, the defendants filed an amended answer and cross bill making parties to the cause, the holders of liens on the property of plaintiff Martin. Farmers' Bank of Fairmont also filed its petition and answer in the nature of a cross bill, making the plaintiff and defendants in the original bill and judgment creditors of plaintiff Charles T. Martin parties defendants thereto.

Plaintiff Charles T. Martin filed his answer to said amended answers and cross bills, which he termed his special replication, admitting the execution of the five thousand dollar note and the trust deed; insisting that the tract of land described in the bill was not liable for any judgment against him or a lien upon said lands; averring that the deed executed by his grandfather, William Martin, dated September 11, 1839, to Jesse Flowers conveying several tracts of land on Booth's Creek, said deed reciting "that whereas the said william Martin hereinbefore named having acknowledged the hereinbefore named Templeton C. Martin

to be his son and for and in consideration of the natural affection and love for him the said Templeton C. Martin aforesaid, and being desirous that the said Templeton C. Martin shall and may enjoy all the benefits of his estate, real and personal, free from any encumbrances and free from any entreatment of the estate of him, the said William Martin, which might come from inexperience, intemperance, or imprudence of him, the said Templeton C. Martin, hath this day granted," etc., to said Flowers "upon trust nevertheless as follows, viz: That the said Jesse Flowers shall rent or lease the hereinbefore described lands to the highest bidder or otherwise as to him shall seem best and pay over annually to Templeton C. Martin, his heirs or wife, and to them only, the proceeds of such rents and profits of the before named premises so long as each or either of them shall survive," and upon the further trust that in case said Templeton C. Martin should die without issue, then the real estate should be sold and the proceeds divided among the grantor's brothers, providing, however, that one-third of the real estate should be set apart to the wife of Templeton during her life, and to be sold at her death and divided as the other among his brothers; that such deed created a trust to which the children of Templeton C. Martin succeeded at his death which occurred on the — day of ———, 1854; that two of such children, Wm. J. Martin and Henry F. Martin, conveyed whatever estate they had in said real estate to John Gawthrop; that afterwards on the — day of ———, 1869, said Gawthrop believing no doubt he had a right to have his interest so purchased by him partitioned off to him, instituted a suit in the circuit court for that purpose. Commissioners were appointed and made partition of said real estate among the heirs of Templeton C. Martin and allotted among others to plaintiff, Charles T. Martin, lot No. 5 the two hundred and eleven and one-half acres involved in this suit; that the report of the commissioners partitioning the lands never was confirmed by the court; that while it is true plaintiff took possession of the lot assigned him and which is the land in controversy, yet he never received a deed for the same or any assignment of the legal title to said land in said Flowers, trustee; that replicant was married in the year 1874 and had six children living with him on said land; averring that the circuit court was without jurisdiction to partition the land in the pro-

cceding instituted by said Gawthrop for the purpose; that the commissioner appointed to partition the lands were without authority to make such partition; that trustee Flowers could not lawfully convey the title to said lands or any part thereof to any of the children of said Templeton C. Martin or to their assigns; that defendants Samuel O. and Celia Kester could not by their cross bill bring in the judgment creditors of replicant who were not petitioning nor asking to be made parties to the suit; that as to the deed of trust and note for five thousand dollars, replicant never had any dealings or transactions with said Celia Kester and never owed her any money or other thing; that he had many transactions with said Samuel O. Kester who was his father-in-law (meaning step father) said Kester's first wife being replicant's mother; that by his marriage with replicant's mother, Kester obtained possession of valuable property and had many dealings and transactions with replicant; that after the death of replicant's mother, Kester became involved financially and to avoid paying his debts entered into a marriage contract with said Celia Kester, then Watkins, by which in consideration of marriage he conveyed to her all the property, both real and personal, claimed by him, at which time there had been no settlement between him and replicant, and that he then informed replicant that such settlement would have to be made with his wife Celia and that he was to act as her agent to make all necessary settlements, and charges said marriage contract to be the result of fraud and covin on the part of Samuel O. Kester and Celia Kester and a trick and device on their part to cheat and defraud the creditors of said Samuel O. Kester; that they both well knew that fact and entered into that contract for that purpose, and that for a like fraudulent purpose they induced replicant to make the deed of trust, concealing from him their purpose and inducing him to believe that said notes and deed of trust were subject to a fair and impartial settlement of the accounts between replicant and said Samuel O. Kester; that said accounts were the only consideration for said note and deed of trust; that replicant at the time of making said note and deed of trust did not know of the state of his accounts with Kester; that he had lived with Kester, who had transacted all his business from early youth up to the time he attained his majority, after which he had many transactions with Kester and thought he might finally be indebted to

him, but now sees that he owed Kester nothing at the time of making the deed of trust, and Kester had fraudulently induced him to make the deed of trust to Celia to avoid a fair and impartial settlement of their accounts; that Celia acquired her rights and title to the accounts between replicant and S. O. Kester by fraud and covin, and did not acquire any right thereto because it was not then known that replicant was or was not indebted to said Kester or Kester to him, but was in fact understood that replicant did not owe Kester. Process was duly served on all the defendants named in the answer and cross bill of the Kesters, and after due notice given the cause was again referred to M. M. Thompson, the commissioner, to state and settle the accounts between plaintiff and the defendants Kesters as provided in the deed of trust and report the amount due from plaintiff to defendant Celia Kester and what amount, if any, was due thereunder to Farmers' Bank of Fairmont; to ascertain and report the lands of plaintiff Martin, where situated, the amount, nature and character, the annual rental value and fee simple value thereof, whether the rents would pay off the liens in five years; also to report the liens on the land, their respective amounts and priorities and to whom due and payable, and whether said Charles T. Martin was solvent or insolvent. The commissioner filed his report, to which both plaintiff and defendants S. O. and Celia Kester filed various exceptions. The cause was finally heard on the 27th of January, 1900, upon the papers and record, orders and decrees, the last report of commissioner Thompson when the court overruled the exceptions, and objections of Celia Kester and S. O. Kester to the special replication of plaintiff and overruled all their objections and exceptions to the commissioner's report, except as to the nine hundred and twenty-eight dollars and sixty-one cents for building the house, furnishing lumber, etc., for plaintiff, which was allowed, with interest thereon from October, 1874, aggregating the sum of two thousand three hundred and twenty-one dollars and thirty-six cents, and overruled the objections and exceptions of plaintiff Martin to said report except certain items of account set out in the decree, as to which the exceptions were sustained, and ascertained the amount due to Celia Kester from the plaintiff the sum of three thousand six hundred and seventy-two dollars and twenty-eight cents, after allowing

deduction of one thousand two hundred and forty dollars and ninety-one cents, the aggregate of items allowed by the court under exceptions to commissioner's report by plaintiff, and the further sum of two hundred and five dollars and ninety-eight cents costs of former appeal, as shown by mandate, and in addition to the said sum of three thousand six hundred and seventy-two dollars and twenty-eight cents, the sum of one thousand three hundred and twenty-six dollars and eighty-six cents to Farmers' Bank of Fairmont, which is yet to be paid by Celia Kester, with interest on said sums from September 12, 1899. The court further ascertained that plaintiff, C. T. Martin, was the owner in fee of the land in question, and proceeded to ascertain the liens thereon and their priorities and decreed the payment thereof by plaintiff Martin; that the rents and profits would not pay the liens within five years and decreed a sale of the tract of land to pay such liens, appointing a special commissioner therefor. The plaintiff Charles T. Martin, appealed from said decree assigning sixteen grounds of error, many of which are on the rulings of the court touching items of account in the commissioner's report for and against plaintiff.

The first assignment is that the court erred in confirming commissioner's report and entering final decree before and without a rejoinder or reply to the special replication of plaintiff, said replication setting up a claim which if true would discharge plaintiff from liability, especially as regards S. O. and Celia Kester. Also, because if said replication is to be considered as an answer to the amended answer in the nature of a cross bill, and setting up new matter as grounds of relief, it must be taken as true unless denied and the Kesters are not entitled to relief. The special replication is simply an answer to the answer of Celia and S. O. Kester, and also the petition and answer of Farmers' Bank of Fairmont, also in the nature of a cross bill. See section 4, chapter 134, Code. In *Moore* v. *Wheeler*, 10 W. Va. 35, syl 1, "A decree will not be reversed for want of a replication to the answer when the defendant has taken depositions as if there had been a replication." *Richardson* v. *Donahoo*, 16 *Id.* 685; *Chalfants* v. *Martin*, 25 *Id.* 394; *Paxton* v. *Paxton*, 38 *Id.* 616. Appellant in his brief dismisses the second and third assignments, but contends that the fourth is well taken, and which is "Because the court erred in holding that petitioner is

owner in fee simple of the aforesaid tract of two hundred and eleven and one-half acres of land, the title thereto being outstanding in the children of petitioner. See special replication of petitioner and deed of William Martin to Jesse Flowers, filed as exhibit 'M. W.' " Some time after the death of Templeton C. Martin, a suit was brought in 1869 and commissioners appointed to partition the lands conveyed by William Martin, among the heirs of Templeton C. Martin, for whose benefit the conveyance was made, the partition made and accepted by the heirs, and within a year from such partition Jesse Flowers, the trustee, conveyed to each of said heirs the part assigned to him conveying to Charles T. Martin the tract of two hundred and eleven and one-half acres here in controversy. It is well proven that the deed was made and delivered. All the deeds to the other heirs are on record, but plaintiff's is not recorded. It is admitted that said Martin took possession thereof as soon as he became of the age of twenty-one years, on the 29th of October, 1873, and has had exclusive possession and control of it ever since. If this were error, it is not to the prejudice of plaintiff. It gives him the land in fee and he cannot complain of it. "It is not sufficient to reverse a decree that it is erroneous. Errors must appear to the prejudice of the party complaining thereof." *Fant* v. *Lamon,* 27 W. Va. 229; *Clark* v. *Johnston,* 15 W. Va. 804.

Appellant contends that the circuit court has overruled the decision of the appellate court in holding that the fee simple in the two hundred and eleven and one-half acres of land is vested in Martin and has violated its directions in decreeing the sale of it in that it is said in the opinion of this Court, 46 W. Va. 438, "that all that could be sold in any event is, his (Martin's) right, title and interest, legal and equitable, and this would not affect the rights of others not parties to the suit," and this is all that the decree proposes to sell in the suit. Appellant claims that the trust created by William Martin's deed clearly comes under the definition expressed in 1 Lom. Dig. 223, "A right in equity to take the rents and profits of lands whereof the legal estate is vested in some other person called the trustee; and to compel such trustee to execute such conveyance of the land as the person entitled to the profits, who is called *cestui que trust,* shall direct," and says "it was evidently the intention of William Mar-

tin to protect the property against the improvidence and waste of his son, Templeton C. Martin, and his family, and to make that which under their management would have been dissipated in a short time a permanent fund, furnishing some support for the household for an indefinite period, hence no one of the *cestuis que trust* has any interest separable from the rest which can be charged or disposed of by him, the fund is provided for the common support of the family, and can only be enjoyed jointly." The trust created by Martin was intended to exist during the life of Templeton C. Martin and his wife, "so long as each or either of them shall survive," and this was the understanding of Jesse V. Flowers, the trustee. After the death of Templeton C. Martin he conveyed the property to the heirs of Templeton C. Martin after they partitioned it among themselves, setting apart the widow's dower. And further appellant is estopped from denying his title to these lands. 46 W. Va. 438.

Fifth assignment, the court erred in sustaining the exception of Celia and S. O. Kester to that part of commissioners report refusing to allow them the item of nine hundred and twenty-eight dollars and sixty-one cents for building house, furnishing lumber, etc., and allowing them credit for said item. The commissioner reported adversely upon this claim upon the evidence. On December 5, 1874, plaintiff Martin in consideration of two thousand five hundred dollars conveyed to S. O. Kester his interest in four hundred and twelve and one-half acres of land which consideration Kester says was made up of "cash and various accounts which were settled by the trustee, Jesse Flowers, which he gave him (Martin) the amount according to the settlement of the trustee, which I gave him for his interest in the dower." When asked, "Did not that transaction settle all the accounts between you and Mr. Martin up to and including December 5, 1874?" answered, "It includes up to the time C. T. Martin come of age," which was October 29, 1873, and further he says in his testimony, "I know the settlement was made before he conveyed to me his interest in the dower. According to my recollection all transactions between me and C. T. Martin in relation to the estate of William Martin, were settled up to the time C. T. Martin was twenty-one years of age, and *the deed given*." While the item of nine hundred and twenty-eight dollars and sixty-one cents is dated in defendant's account "1871" it is clearly shown to be in 1874, but was completed before the

making of the deed in December, 1874. Martin testifies that he does not know anything about the settlements Kester claimed, but that he, Martin, was to have possession of the land upon which he gave the trust upon making Kester a deed for his interest in the dower of his mother, and says, "S. O. Kester claimed I owed him two thousand five hundred dollars, and if I would make him a deed for the dower he would square off," and says that the items for building the house and items prior to his coming of age were included in the two thousand five hundred dollars, and further says Kester told him "that if I would give him up the possession of the land, the dower, he would give me up the house and land," and Kester did not deny this statement. The commissioner says in his report that Mr. Kester was asked to produce the statement showing the items composing the two thousand five hundred dollars which witness McCann says he gave him, and he declined to do so, saying some years ago he gave it to Martin, but Martin produced the papers he gave him and "states positively that he did not give him said statement— two thousand five hundred dollars is too large a sum to be thus unaccounted for." James M. McCann, a witness, says S. O. Kester submitted certain papers to him and asked him to state an account between himself, Martin and others, and he made such settlement, he thinks not less than twenty-three to twenty-five years ago, and being asked about the item for building the house says, "My recollection is too indefinite to make any statement about the house. It might have been included, and it might not. I have sort of a lingering recollection that the house was included, but I would not swear to that. * * * * I turned the papers I made up for Mr. Kester over to Mr. Kester." The consideration of the deed from Martin to Kester for his interest in the four hundred and twelve and one-half acres of land on December 5, 1874, was the amount of two thousand five hundred dollars ascertained by a settlement between the parties. Just to what date the settlement was made is somewhat in dispute. One of the parties, Kester, says the item in question was not included in the settlement, the other, Martin, says it was, and further says that Kester told him if he would make the deed they would "square off." This statement is not denied by Kester, and it is clear that the account for nine hundred and twenty-eight dollars and sixty-one cents existed at the time and before the deed was made December 5, 1874. Silas Dawson, a witness

for Kester, who helped to build the house says they began the house June 4, 1874, and finished the latter part of October' the same year, further says Kester told him "he was building the house gratis or as a gift to Martin, and he used that as an argument with me of getting it built cheaper." It is fair to presume that if he intended to charge his step-son for the building of the house, it was included in the settlement. Martin is at least to some extent corroborated by the rather uncertain but "sort of lingering recollection that the house was included," as stated by witness James M. McCann. The report of the commissioner as to this item should have been sustained, and the decree should be corrected by deducting from it the amount allowed to the Kesters on that account stated in the decree to be two thousand three hundred and twenty-one dollars and thirty-six cents, including interest.

As to the items of account allowed by the commissioner and excepted to by appellant as set out in his sixth and seventh assignments of error wherein he claims the court erred in overruling his exceptions to the report, the evidence is conflicting as to all such items (except the item of three hundred and sixty-eight dollars and fifty-five cents for ·thirteen head of cattle in November, 1870) and the commissioner and court having both passed on the evidence, the appellate court will not disturb the finding, but as to the said item of three hundred and sixty-eight dollars and fifty-five cents, the exception was well taken, because it is stated in evidence by both Martin and S. O. Kester that all items of account prior to the date of· Martin attaining his majority, October 29, 1873, were included in the settlement of December 5, 1874, and this item dates back to 1870, three years prior to the date of Martin arriving at the age of twenty-one years, and it is not pretended that the date, November, 1870, is not correct. So there is no evidence to sustain this item. The exception should have been sustained as to this item, and the decree should be further corrected by deducting the amount thereof which shows in the report to be, including interest, nine hundred and eight dollars and sixty-nine cents, as of September 12, 1899. Appellant's eighth assignment that the court overruled plaintiff's fifth exception to the commissioner's report for the reason in said exception given, viz: because the effect of it is to charge exceptant with the eight hundred and sixty dollar note of January 7, 1888, due May 19, 1888, when in fact S. O.

Kester and Celia Kester assumed payment of said note by their agreement of May 7, 1888, filed in the cause, and claiming that it should be first deducted from the deed of trust of five thousand dollars and after being so deducted the settlement should then proceed on the state of the accounts between Martin and Kester. This position would probably be tenable, but for the fact that the amount represented by the five thousand dollar note was made up, or rather to be made up of such items of account as might be established in favor of Kester in the settlement, which was thereafter to be made. The note for eight hundred and sixty dollars was signed by both Martin and Kester and J. B. Martin, and it was simply agreed by the writing mentioned that Kester was to pay the note which was the debt of Martin, and it was to constitute a part of the debt represented by the five thousand dollar note, being an item that was to enter into the settlement without dispute. The five thousand dollar note is nowhere in the settlement charged up to Martin. So that the allowance of it by the commissioner could not have the effect of charging appellant twice. Moreover the decree especially provides against such a contingency by providing that the payment of the judgment against the parties reported in favor of the Farmers' Bank of Fairmont for the sum of one thousand three hundred and twenty-six dollars and eighty-six cents, including interest, should be a satisfaction of the amount allowed Celia Kester on that account under the deed of trust, and should not be again enforced. Appellant's ninth assignment, that the court erroneously overruled his sixth exception to commissioner's report, because all the accounts of Kester were barred by the statute of limitations. There being no plea of statute of limitations in any form, and no mention of this assignment in appellant's brief, I take it that it is not relied upon. The tenth assignment is substantially the same as the fourth, as is also the fourteenth. The eleventh, twelfth, thirteenth and sixteenth, all question the correctness of the court in holding that the various judgments decreed to be paid are liens upon the two hundred and eleven and one-half acres of land. The sixteenth assignment reads, "Because as stated in the opinion of the court upon the former appeal, 'the provisions of the Code in relation to the enforcement of judgment liens, and the various declarations of this court relating to the necessary parties and the proper manner to summons and implead them appear to have been entirely

overlooked in this case,' again as shown by petitioner's eleventh, twelfth and thirteenth assignments of error in this petition and otherwise, and said circuit court has not proceeded in said cause as directed by the mandate on the former appeal and in accordance with the opinion of your honor's court filed therein and the rules and principles governing courts of equity." It is insitsed that the answer of the defendants sets up new matter entirely foreign to the allegations of the original bill, and cites *McMullen* v. *Eagan,* 21 W. Va. 234; *Riggs* v. *Armstrong,* 23 *Id.* 760, and *Kanawha Lodge* v. *Swann,* 37 *Id.* 176. The defendants S. O. and Celia Kester were proceeding through their trustee regularly to enforce their trust lien against the property of plaintiff Martin and were enjoined and restrained by a suit brought for that purpose, setting up two grounds for the injunction, first, that plaintiff had no title to the land sought to be sold when he executed the trust deed, and second, that he did not owe the defendant Celia Kester, and did not give the note mentioned in the trust deed, and if he did give the note it was subject to a settlement of large accounts and transactions between himself and S. O. Kester. The first ground of injunction is disposed of in *Martin* v. *Kester,* 46 W. Va., and it is there further said, "The defendants set up as new matter calling for affirmative relief that judgments exist against plaintiff's land prior in right to defendant's trust lien, and, in ascertaining and fixing the amount of the latter, they ask that the former may be determined, so that a proper sale of the land, if any, may be had. * * * * If the defendants have a lien, they, having been brought into a court of equity, have the right to have it enforced under the court's supervision, and to properly enforce it, the prior liens must be ascertained. The defendants therefore had the right to file an answer in the nature of a cross bill for this purpose. In doing so they must make parties thereto all the prior lien holders as well as the plaintiff, and process must be issued thereon as to an original bill, so that all parties may be properly brought before the court, and impleaded, to the end that complete equity may be meted out." The directions therein contained have been carried out. The eleventh, twelfth and thirteenth assignments, so far as the allowance of the judgments is concerned are not well taken, because they were reported in the commissioner's report as valid liens, no exception to the report touching that matter or raising any objection thereto, which report was confirmed as to such

judgments. In *Righter* v. *Riley,* 42 W. Va. 633, (26 S. E. Rep. 357) syl. 2, it is held : "When a commissioner, to whom a case is referred for the purpose, reports the existence of certain facts, and there is no exception thereto, such facts will be accepted as fully established in the further progress of the suit." *Ward* v. *Ward,* 21 W. Va. 262; *Hutton* v. *Lockridge,* 22 *Id.* 159; and in *Kester* v. *Lyon,* 40 W. Va. 161, (20 S. E. 933), it is held : "When exceptions are taken to certain parts of a report, the others not excepted to are admitted to be correct, both as regards the legal principles and the evidence on which they are based." *Ward* v. *Ward's Heirs,* 40 *Id.* 611, (21 S. E. 746).

The fifteenth assignment is, "Because said court erred for the reasons given in the second, third, fifth, eighth, ninth, eleventh, twelfth, thirteenth, fifteenth and seventeenth assignments of error in petitioner's petition for the previous appeal." The assignments here referred to have all been considered herein except the third and seventeenth mentioned, and in fact the third has which is that "the defendants in seeking the relief they did in their answer should have made Thomas J. Flowers, administrator of the estate of Jesse Flowers, deceased, a party to this suit." It appears from the record that the trustee, Jesse Flowers, had conveyed the legal title before his death, and no interest passed to the hands of his administrator. The seventeenth assignment referred to is that "the court erred in appointing Lewis C. Lawson special commissioner to sell said land, as the proper order would have been to dissolve the injunction and direct Sherman C. Denham as trustee to make said sale," and cites *Righter* v. *Riley, supra,* where it is held, "Equity will not interfere with a trustee in the proper discharge of the duties of his trust." That was a case in which plaintiffs filed their bill to have postponed a debt secured to the wife of the trust debtor in a general assignment to the debts of all other creditors. Upon the hearing the said debt was sustained, and the bill dismissed, and there was no reason why the cause should be kept in court and the trust executed under its supervision. There appeared to be no complications, such as prior liens or other deeds of trust or incumbrances, and there was no difficulty in the trustee executing the trust according to its provisions. In case at bar the note for five thousand dollars given by Martin and secured by deed of trust states on its face that it "is subject to any credit

to which the undersigned (maker) may be entitled by reason of an agreement entered into this day between him and Samuel O. Kester, agent for Celia Kester." On the trustee taking legal steps to enforce the trust, he was enjoined, and the court properly took jurisdiction to settle the accounts between the parties and the nature of the cause, prior liens being ascertained, priorities to be settled, accounts to be adjudicated, made it impossible for the trustee to execute the trust. The court having taken jurisdiction and the trustee and creditors being formal parties to the suit, a sale cannot be made under the deed of turst. *Parsons* v. *Snyder*, 42 W. Va. 517; *Bock* v. *Bock*, 24 *Id.* 586; *Hartman* v. *Evans*, 38 *Id.* 669. The rights of all parties being submitted to the court, it is a matter of its sound discretion as to the appointment of a proper special commissioner to execute its decree in making sale of the property decreed to be sold.

For the reasons stated, the decree complained of is reversed in part and cause remanded with directions to the circuit court to allow credit to appellant for the two items of two thousand three hundred and twenty-one dollars and thirty-six cents and nine hundred and eight dollars and sixty-nine cents as of September 12, 1899, upon the amount decreed to Celia Kester, and in all other respects the decree is affirmed.