In the Matter of the Judicial Accounting of JAMES BALDWIN, Appellant, and LUCIUS N. MANLEY, Respondent, as Executors, etc., of SARAH WEATHERBY, Deceased.

*A payment indicates the extinguishment of a debt, and not a loan — Statute of Limitations — acknowledgment of a debt.*

Where there has been a payment of money by one person to another, the presumption is, in the absence of any explanation as to the cause of the payment, that the money was paid because it was due, and not by way of a loan; if there be an antecedent debt, that it was paid thereon.

A sister, loaned to her brother, who was a banker, her name and credit in his business and certain sums of money for which he gave her his notes, and she, during a period of twelve years, ending in December, 1892, made deposits in the bank of her brother, and from time to time drew, by checks, from the bank, moneys in excess of her deposits, the excess representing an amount nearly equivalent to the interest due upon the notes which she held against her brother. The brother acquiesced in these overdrafts, and there was no evidence that the sister had any other claim against him upon which the advances could be applied. After the death of his sister, the brother, who was an executor under her will, presented to his co executor a statement showing the advances made to her in excess of the deposits, representing some $5,048.89, for which he afterwards made a claim against her estate, at the same time insisting that the notes given by him to his sister were barred by the Statute of Limitations.

*Held*, that the checks representing overdrafts were to be considered payments made by the brother to his sister for the interest due by him to her upon his notes, constituting a recognition of the notes as an outstanding unpaid obligation of the brother and taking them out of the Statute of Limitations.

FOURTH DEPARTMENT, DECEMBER TERM, 1896.    [Vol. 11.

APPEAL by James Baldwin, one of the executors, etc., of Sarah Weatherby, deceased, and a residuary legatee named in her will, from so much of a decree of the Surrogate's Court of the county of Steuben, entered in said Surrogate's Court on the 26th day of October, 1895, as adjudges him to be indebted to the estate of Sarah Weatherby in the sum of $10,677.48, and from so much of said decree as fails to adjudge that the said estate is indebted to James Baldwin and Henry Baldwin, as surviving partners of the firm of James Baldwin & Co., in the sum of $5,049.89.

On the 10th day of December, 1892, Sarah Weatherby made and published her will wherein she appointed Lucius N. Manley and James Baldwin executors. She died on the 11th day of December, 1892, and the will was admitted to probate and letters testamentary were issued to the executors, who qualified. Appraisers were appointed and an inventory taken of her personal estate in the month of March, 1894. The total amount of the inventory was $29,374.77. Citations were issued requiring the executors to account in the Surrogate's Court in Steuben county. The parties appeared and evidence was produced in the Surrogate's Court and the case was finally submitted to the surrogate, who made findings of fact and conclusions of law, upon which a decree was entered, from parts of which James Baldwin appeals.

The surrogate's ninth finding of fact was as follows : " That said Baldwin made, executed and delivered to the testatrix, Sarah Weatherby, certain promissory notes of face amounts respectfully*. $10,500, $3,780, $486.00, $878.88 and $302.40 (here insert copies of such notes in evidence). That same were for money loaned him by testatrix. That divers payments were made thereon, which were indorsed on said notes respectfully* (here insert indorsements made on such notes respectfully*). That for some time prior to, and ever since the dates respectfully* of the last indorsements on said notes, said James Baldwin has been engaged in banking business at Addison under the name of James Baldwin & Co.'s Bank. That the funds and business of said bank (which was not incorporated) were in fact the funds and business of said James Baldwin. That at divers dates since the dates respectively of the indorsements on said notes, said James Baldwin paid to said testatrix as payments to

* Sic.

apply on said notes divers sums by paying directly to her and for her benefit. So much of the several sums set forth as debits to her in exhibit '5' at the dates therein set forth respectfully* exceeded the items of credit in such exhibits at the dates set forth in such credit items respectfully* (here insert exhibit '5.') That on or about March, 1894, at Addison, in an interview with said Manley, executor, as aforesaid, he presented said notes to said Manley, and with them a statement showing the amount due from him to said estate upon the said notes to be the sum of said notes and interest, less the payments aforesaid, interest on all being computed at 6 per cent., and said debits and all debits in said exhibit being applied as payments by him is such computation. That the amounts due said estate from said Baldwin individually on said notes on the 1st day of June, 1895, after crediting the payments aforesaid, the sums of $10,424.55, and there is also due interest on said $10,424.55 to the date hereof."

*D. M. Darrin*, for the appellant.

*John F. Parkhurst*, for the respondent.

HARDIN, P. J. :

Appellant carried on a banking business at Addison for several years prior to the death of Mrs. Weatherby, who was his sister, and associated with him in the business as partners were Henry Baldwin, his brother, and his sister, Sarah Weatherby, the testatrix. "They did not put in any capital and nothing was said about profits ; they simply lent their names for credit." The assets of the bank all belonged to the appellant. Mrs. Weatherby's name was connected with the bank in April, 1880. The appellant carried on a general banking business, receiving and paying out moneys, having personal supervision thereof, and aided at times by clerks and employees. The business of the appellant as a banker was carried on substantially in the same manner down to the time of the trial. The bank had no stated capital, and relied for its credit upon the individual responsibility of the parties associated in the bank.

Appellant insists that the notes mentioned in the ninth finding of fact are barred by the Statute of Limitations. By the evidence it appears that some eleven years antecedent to the death of the tes-

---

\* *Sic.*

tatrix she had an account with her brother's bank, and was accustomed to make deposits in the bank which went to her credit, and was accustomed also to draw checks from time to time during the period extending from the opening of the account to the close of her life, and that her account was carried along in the bank without any balancing or settlement from 1880 to December 11, 1892, the date of her death. During the several years she drew from the bank, by means of checks, which overdrew her account from time to time, sums about equivalent to the interest due upon the notes which she held against her brother; and it appears that he was the sole owner of the assets from which the checks were paid. As between him and her he was entitled to use the assets, in the manner in which he did, by advancing moneys upon checks which she drew in the course of her transaction with her brother at his bank. From the evidence it is quite apparent that she, in drawing the checks, intended to receive from her brother a sum, at least, equivalent to the interest accruing upon the notes which she held against him. The circumstances attending the interview between the appellant and his co-executor, Manley, about the time the inventory was under preparation, point largely to an understanding on the part of the appellant that such was the intention of the testatrix in overdrawing her account, and such was his intention in honoring the checks and advancing money to her from time to time. When he and his co-executor met, a statement was prepared of the amount of her account, showing the precise condition of the same, reference being had to the deposits which she had made and to the drafts and checks which she had drawn upon the account, and the aggregate of the advances made by the appellant to her were in the neighborhood of $5,048.89 in excess of the deposits made by her during that period. A consideration of all the evidence produced before the surrogate very clearly warranted the conclusion reached by the surrogate, that the advances were understood by the appellant, as well as by the testatrix, to be towards and for the interest upon the notes held by her against him. The evidence fully warranted the finding, viz.: " That at divers dates since the dates respectively of the endorsements on said notes, said James Baldwin paid to said testatrix, as payments to apply on said notes, divers sums by paying directly to her and for her benefit."

There is no evidence to indicate any other purpose in advancing money upon the checks, as she had no other claims against him upon which the several sums advanced, through the instrumentality of the checks, could be applied. The evidence warrants the presumption that where there is a delivery of money by one person to another, whether in cash or in checks, and no explanation is offered thereof, the party paying or delivering the same intends the same as a payment of an antecedent debt, and not of a loan. (*Poucher* v. *Scott*, 33 Hun, 223; S. C. affd., 98 N. Y. 422; *Grafing* v. *Heilmann*, 1 App. Div. 260.)

In the course of the opinion delivered in *Sayles* v. *Olmstead* (66 Barb. 590) the court said : " There is no principle better settled than that where one pays money to. another, in the absence of any explanation as to the cause of the payment, the presumption is that it was paid because it was due, and not by way of a loan."

Appellant calls our attention to *Crow* v. *Gleason* (141 N. Y. 493). In that case it was said : " If there be a mere naked payment of money, without anything to show on what account, or for what reason the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid."

We think the circumstances disclosed by the evidence in this case very clearly indicate that the appellant, when he advanced the moneys to his sister in the manner and under the circumstances disclosed by the evidence, intended to have the same applied on the indebtedness which she held against him, and that she, on receiving the money, under the circumstances, intended to apply the same on the notes which she held against him. The confidential relations existing between brother and sister, to which were superadded the confidence which she had reposed in him by loaning to him her name in his business as banker, as well as the interpretation which he put upon the circumstances when he held the interview with his co-executor, quite satisfactorily indicate that it was the understanding of the parties, at the time that the several advances were made, that the money should be applied upon the indebtedness which she held in notes against him. The facts disclosed by the evidence in this case differ very essentially from those in the case of *Crow* v. *Gleason* (141 N. Y. 493).

In the course of the opinion delivered in *Adams* v. *Olin* (140 N. Y. 160) it was said that a payment to operate as an admission must have been a deliberate act of a debtor, evidencing or accompanied by some evidence of, or intention to thereby acknowledge to his creditor the existence of a greater indebtedness. It was also said, viz. : " Without the written evidence of an acknowledgment of the debt, which the statute requires, a payment, to be effectual as an acknowledgment, because a recognition of an indebtedness, must enable us to infer, from the circumstances, if without any other evidence, the debtor's intent that it shall be so taken by his creditor." In that particular case the payments relied upon to take the debt out of the statute, which the court held were insufficient, were not made until the period of limitation had elapsed. Not so in the case before us.

In *Steven* v. *Lord* (32 N. Y. Supp. 309) it appeared that payments on account of the interest upon the note in suit were made every year between July, 1880, and July, 1892, and that, under the circumstances disclosed in that case, there was manifest a full recognition of the note as an outstanding unpaid obligation, and that, therefore, the Statute of Limitations did not apply.

There was no proof given of any agreement on the part of Mrs. Weatherby to pay interest upon overdrafts; nor was she at any time notified or required to make payment of interest on the overdrafts, and the acquiescence of the brother banker in the overdrafts apparently was upon the understanding that the same were caused with the intention on her part of securing from him the interest due to her upon the notes which she held against him.

The testimony of what took place when the inventory was prepared and of the interviews between the appellant and Mr. Manley, shed considerable light upon the intention of the appellant in respect to the advances made to his sister, and, coupled with the acts and payments actually made, support the conclusion of fact pronounced in the surrogate's findings and warrant his conclusion of law that the Statute of Limitations was not a defense to the notes.

The foregoing views lead to an affirmance of those parts of the decree appealed from.

All concurred.

Portions of the surrogate's decree appealed from affirmed, with costs against the appellant.