Richmond.

McVEIGH's *Adm'r* v. CHAMBERLAIN.

December 3, 1896.

Absent, KEITH, P.*

1. PRESUMPTION OF PAYMENT—*Bond not due—Evidence of payment—Checks imply money due by drawer, or money loaned him.*—Upon satisfactory proof that one has excuted and delivered his obligation to another, for an interest in real estate contingent upon the obligee surviving his mother, which obligation is only payable when, and on condition that the obligee survives his mother, no presumption of payment arises in the lifetime of the mother, and evidence of payment during the lifetime of·the mother, and before any liability has accrued to the obligee should be strong and clear. The production of cancelled checks of the obligor to the obligee, or an acceptance of said obligor to the obligee, do not constitute such proof. They rather imply, in the absence of other evidence, that they were given in payment of a debt then due and payable from the obligor to the obligee, or for money then lent by the obligee to the obligor. In the case at bar the evidence does not warrant a presumption of payment.

2. EVIDENCE—*Competency of witness—Adverse interest.*—Where the subject of investigation is a bond, and the legatee and devisee of the obligor is first examined as a witness in behalf of the estate of the obligor, this renders the obligee a competent witness in his own behalf, under section 3346 of the Code.

3. EVIDENCE—*Exception to deposition—Attention of trial court.*—Unless the record shows that an exception to the deposition of a witness for incompetency or other cause, was brought to the attention of the trial court at the hearing, it will be taken by the appellate court to have been waived.

Appeal from a decree of the Circuit Court of the city of Alexandria, pronounced April 13, 1893, in the chancery suit

---

*Judge Keith decided the case in the court below.

of *McVeigh's Ex'or* v. *McVeigh and others*, wherein the appellee filed his petition asserting a debt against the estate of the complainant's testator.

*Affirmed.*

The opinion states the case.

*John M. Johnson* and *F. L. Smith*, for the appellant.

*Brooke & Scott*, for the appellee.

Riely, J., delivered the opinion of the court.

Luther Chamberlain, who died in 1828, was the owner of a two-thirds interest in certain wharf property in the city of Alexandria. Under his will, his son, James L. Chamberlain, was entitled to the said property in the event that he survived his mother, to whom the testator gave all of his estate for her natural life, and also to her absolutely if no one of his children survived her.

Wm. M. McVeigh, with whom the widow of Luther Chamberlain intermarried, having become the owner of the other one-third interest in the wharf property, bought, in 1852, of James L. Chamberlain, his contingent interest therein for the price of $5,000, and gave him his obligation for that sum, payable at the death of his mother in case he survived her.

McVeigh died in 1889. His widow died in 1890, leaving her son, James L. Chamberlain, surviving her, whereby the obligation of McVeigh to him became a fixed liability.

The executor of McVeigh brought a suit in chancery to administer the estate of his testator under the direction of the court, in which cause James L. Chamberlain, after applying to the executor for payment of the said obligation, filed, on August 14, 1891, his petition, verified by his oath, and claimed payment of the said debt. In his petition he set forth the sale of his interest in the wharf property to McVeigh, and the execution by the latter of his bond for the

purchase price, but alleged that, owing to the loss of papers during the war, or in some other way, he was unable to produce the bond, although he had made diligent search for it.

In the book kept by McVeigh of his real estate, and proved in the case, there was recorded in his own handwriting, and signed by him, a full memorandum of the purchase in 1852 from Chamberlain of his interest in the wharf property, and of the execution to him by McVeigh of his obligation for $5,000, payable at the death of the mother of Chamberlain, provided he survived her. This evidence confirmed, except as to the loss of the bond, the material allegations of the petition, and fully established the purchase of the wharf property, the execution of McVeigh's obligation to Chamberlain for the purchase money, and the contingency upon which, and the time when, it would become payable.

The claim was resisted upon the ground that it had been paid. There was no direct evidence of such payment, but certain circumstances were relied on to sustain a presumption of payment by McVeigh in his lifetime.

The allegation in the petition of the loss of the bond was denied by the answers filed thereto, and there was much criticism of the failure of Chamberlain, if the bond was lost, to make known the loss in the lifetime of McVeigh, and to obtain from him a duplicate of the bond, or some evidence of his contingent liability. It is sufficient to say here that its loss during the confusion produced by the war was merely a conjecture, and that the record contains no evidence as to the manner or the time of its loss, or that the loss was discovered until after the death of Mrs. McVeigh, when it became a fixed liability, and payable.

It was shown in evidence that Chamberlain resided in New York prior to the late war, and, being in straightened circumstances, was financially assisted by McVeigh, who was a person of large means; and it was claimed that in this way the payment of his bond to Chamberlain was anticipated be-

fore it matured.   Certain checks drawn by McVeigh in favor
of Chamberlain, and a draft drawn by Chamberlain on Mc-
Veigh and accepted and paid by him, during that period,
were introduced in evidence and relied upon in support of
this theory; but no connection was shown between the checks
and draft and the obligation of McVeigh to Chamberlain.
On the contrary, it appears from other evidence in the record
that McVeigh' in these transactions was simply lending his
credit to Chamberlain, and that he was reimbursed by Cham-
berlain in great part, if not wholly, for the moneys he so
paid.

It was further shown that the books and papers of McVeigh
were disturbed in his absence from Alexandria during the
war, and many of them lost, and that the book, wherein he
recorded the memorandum of his purchase of the wharf pro-
perty, and the execution of his obligation to Chamberlain for
the purchase money, was restored to him on his return by
one person, and the checks and draft by another.   In the
page of the book where he recorded this memorandum there
are several pin holes, and there are also pin holes in the checks
and draft which, it is claimed, correspond with those in the ·
book; and this circumstance was also relied on to prove that
the checks and draft were given and paid by McVeigh in dis-
charge of his obligation to Chamberlain, and were pinned
there by him as evidence of the fact.

There is nothing whatever in the record, as already stated,
to connect the checks and draft with the bond given by Mc-
Veigh to Chamberlain; nor a particle of evidence beyond the
alleged correspondence between the pin holes in the checks
and draft with those in the book to prove that the former
were ever pinned to the latter, or if so, that they were pinned
there by McVeigh, or with his knowledge.

The checks themselves would have implied, in the absence
of evidence to repel the implication, that they were given in
payment of a debt then due and payable from McVeigh to

Chamberlain, or for money lent by the latter to the former at the time of the execution of the checks (*Terry* v. *Ragsdale*, 33 Gratt. 342); and it would be a violent presumption, in the absence of clear and strong evidence to that end, to infer that they were given in payment of a contingent obligation, which might never become payable or constitute any liability.

Evidence of a mere correspondence between the pin-holes in the checks and draft with the like holes in the book is deserving of little weight in the absence of any entry in the book that the obligation had been discharged. If McVeigh had pinned the checks and draft to the page of the book where he had recorded the memorandum of his purchase of the wharf property and of his obligation to Chamberlain for the purchase money for the purpose of showing that he had paid the debt, as is claimed, the particularity of habit that would have caused him to do so would scarcely have fa'led to cause him, by some entry, to note its discharge, or to connect the checks and draft with its payment, especially when they contained in themselves no reference whatever to the obligation; but, on the contrary, McVeigh died many years after the alleged discharge of his obligation, leaving uncancelled the memorandum of its existence in the hands of Chamberlain, and no suggestion by the slightest entry that he had paid it. Evidence of this character falls far short of furnishing ground for the presumption of payment of the debt of the appellee.

James L. Chamberlain, in his deposition given in the cause, states positively the loss of the bond; that he did not ascertain its loss until after the death of his mother; that he had made diligent search for it and had been unable to find it; and that he had not received payment of any part of it. His competency as a witness was excepted to, but this objection had been removed by the examination of W. N. McVeigh, Jr., who, as a devisee and legatee of the debtor, in the transaction which was the subject of the investigation, had an in-

terest adverse to that of Chamberlain, and had previously testified in behalf of the estate of McVeigh. Code, sec. 3346; and *Brock's adm'r.* v. *Brock et als.*, 92 Va. 173.

And besides, the decree appealed from shows that the cause was brought on to be heard on the depositions, along with other papers of the cause, but does not show that the exception to the deposition of Chamberlain was brought to the attention of the court. Under the decisions of this court, an exception taken to a deposition on the ground of the incompetency of the witness or for other cause, if not brought to the attention of the court below at the hearing, will be taken by the appellate court to have been waived.

*Fant* v. *Miller & Mayhew*, 17 Gratt. 227-228; *Simmons* v. *Simmons' adm'r.*, 33 Gratt. 460-61; and *Martin et als* v. *South Salem Land Co.*, *ante*, p. 28.

But his deposition was not necessary to the proof of his debt. The execution of the obligation and its existence in his hands were proved by the acknowledgment of the debtor himself, recorded in his own book in his own handwriting and over his own signature. This statement also showed that the obligation was not payable until the death of the mother of the appellee, and that no liability at all could accrue to him on it, unless he survived her. She survived the debtor. Therefore, no presumption of payment in his lifetime could legally arise. There is no pretense of its payment since his death. Evidence that its payment was anticipated by the debtor before his liability upon it became fixed should be strong and clear. Such evidence was not produced.

There is no error in the decree of the Circuit Court, and it is affirmed.

*Affirmed.*