(64 Misc. Rep. 156.)

### LEASK et al. v. HOAGLAND et al.

(Supreme Court, Special Term, New York County. July, 1909.)

1. LIMITATION OF ACTIONS (§ 165*)—OPERATION AND EFFECT OF BAR.
   The statute of limitations affords no presumption of payment, and bars only the remedy.
   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 649; Dec. Dig. § 165.*]

2. WILLS (§ 731*)—EFFECT OF BAR—SATISFACTION OF DEBT OUT OF LEGACY.
   Notwithstanding the bar of limitations, executors were authorized to satisfy a debt owing testator out of a legacy to the debtor.
   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 731.*]

3. PAYMENT (§ 67*)—PRESUMPTIONS—CHECKS.
   Presumptively bank checks represent payments, or were given in exchange for money, and the burden of proving their several amounts to have been loans devolves upon the person asserting it.
   [Ed. Note.—For other cases, see Payment, Cent. Dig. § 198; Dec. Dig. § 67.*]

4. PAYMENT (§ 67*)—PRESUMPTIONS—CHECKS.
   The presumption that bank checks represent payments, or were given in exchange for money, is one of fact, and is overcome by proof from which it may fairly and reasonably be inferred that the transaction was in fact a loan.
   [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 189–194; Dec. Dig. § 67.*]

5. WILLS (§ 715*)—RELEASE OF INDEBTEDNESS—RESIDUARY LEGATEE.
   To authorize a finding that, in constituting a debtor to him a residuary legatee, testator forgave the indebtedness, it must appear directly or by fair inference that testator intended to discharge the debt.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1704–1707; Dec. Dig. § 715.*]

6. WILLS (§ 715*)—RELEASE OF INDEBTEDNESS—EVIDENCE.
   Preservation of evidence of a legatee's indebtedness uncanceled is strong evidence that testator did not intend to forgive the debt.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1707; Dec. Dig. § 715.*]

7. WILLS (§ 731*)—AMOUNT DUE FROM LEGATEE TO TESTATOR.
   In the computation of the balance due a legatee after deducting his indebtedness to testator, interest is chargeable on the debt until one year after issuance of letters testamentary.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1794; Dec. Dig. § 731.*]

8. ATTORNEY AND CLIENT (§ 182*)—LIEN—NATURE OF.
   An attorney's lien is of two kinds, general and particular. The general lien attaches to every species of property belonging to the client and which has come to the attorney's possession in the course of his employ-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment. The particular lien attaches to the fund or other property made through the attorney's efforts in the action in which recovery is had.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. § 182.*]

9. ATTORNEY AND CLIENT (§ 185*)—LIEN—ASSIGNABILITY.

Unlike the attorney's general or possessory lien, his particular lien is assignable, where the assignment carries with it no breach of the attorney's duty to preserve his client's confidence inviolate.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 387; Dec. Dig. § 185.*]

10. WILLS (§ 743*)—ASSIGNMENT OF LEGACY—NOTICE TO EXECUTOR.

The only office of notice to an executor of the assignment of a legacy is to guard against payment by the executor to the assignor or others claiming under him, since the assignment is effective by delivery without such notice.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 908; Dec. Dig. § 743.*]

11. WILLS (§ 744*)—DESCENT AND DISTRIBUTION (§ 87*)—TRANSFERS OF INTERESTS IN DECEDENTS' ESTATES—NOTICE.

Laws 1904, p. 1690, c. 692, providing for the recordation of transfers of interests in decedents' estates, invalidates an earlier unrecorded transfer as to a subsequent transferee in good faith; that is, without notice of earlier rights.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1911–1917; Dec. Dig. § 744;* Descent and Distribution, Cent. Dig. §§ 330–336; Dec. Dig. § 87.*]

12. WILLS (§ 744*)—DESCENT AND DISTRIBUTION (§ 87*)—TRANSFERS OF INTERESTS IN DECEDENTS' ESTATES.

Presumptively those claiming under recorded transfers of interests in estates of decedents are transferees in good faith as against transfers earlier in time, but unrecorded, or of later record; and the burden is on him who claims under an unrecorded transfer, or one of later record, in hostility to one later in time, but first recorded, to show that the latter was taken with notice of the earlier one.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1911–1917; Dec. Dig. § 744;* Descent and Distribution, Cent. Dig. §§ 330–336; Dec. Dig. § 87.*]

Accounting by George Leask and others, as executors of the will of Hudson Hoagland, deceased, against Charles F. Hoagland and others. Account settled.

Dougherty, Olcott & Tenney (J. Hampden Dougherty, of counsel), for plaintiffs.

Purdy, Squire & Howe (A. G. Squire, of counsel), for defendant Martin.

Thomas E. Boyd, for defendant Hill.

Lewis & Carroll (Mr. Carroll, of counsel), for defendant Third National Bank of Buffalo.

Harry David Kerr, pro se.

James A. Turley, for defendant Thomas H. Hoagland.

BISCHOFF, J. Their accounting in the Surrogate's Court having been arrested for want of that tribunal's jurisdiction to pronounce upon the merits of the questions, the executors of Hudson Hoagland, deceased, have brought this action to determine, firstly, the fact as well

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as the amount of Charles F. Hoagland's indebtedness to the testator; secondly, the time up to which interest should be charged against him upon his indebtedness; thirdly, the executors' right to offset the indebtedness against the debtor's share as a residuary legatee; fourthly, the claim of Harry David Kerr, as assignee of Thomas E. Boyd, an attorney at law, to a lien upon Charles F. Hoagland's share, for professional services performed and necessary disbursements made at the latter's request; and, fifthly, the order in which the defendants Martin, Hill, Thomas H. Hoagland, as ancillary executor, etc., of Mahlon Hoagland, deceased, the Third National Bank of Buffalo, and Frank D. Hearn, being severally assignees of fractional parts of Charles F. Hoagland's share, and Harry David Kerr, as the assignee of Thomas E. Boyd's lien, are respectively entitled to payment out of the fund.

It is shown and undisputed that the executors of Hudson Hoagland, deceased, held Charles F. Hoagland's promissory note for $10,000, dated the 1st day of March, 1901, and payable to the order of the testator one day after date. In addition, the executors assert Charles F. Hoagland's indebtedness to the testator in the aggregate amount of $5,108.45 for loans made to the former at divers times after the date of the note. As to the note, it is urged for the defendants, assignees and lienor, that the loss of any right of action thereon because of the expiration, after its maturity, of the period limited by the statute for such purpose, operates to defeat the debt's availability as an offset to the legacy. This contention, however, is clearly unsound. The statute of limitations affords no presumption of payment, and bars only the remedy. Though the remedy for the enforcement of the debt has been lost by delay, the creditor's right to payment is unimpaired. Hulbert v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59; Shepherd v. Thompson, 122 U. S. 234, 7 Sup. Ct. 1229, 30 L. Ed. 1156; Campbell v. City of Haverhill, 155 U. S. 610, 616, 15 Sup. Ct. 217, 39 L. Ed. 280; Wigram, Wills (2d Am. Ed.) p. 367, § 7. If the debt is secured by a lien or pledge, the former is not discharged; nor does the debtor become entitled to a release of the property bound, or a return of the securities pledged, because the remedy for the enforcement of the debt, by affirmative judicial action or proceeding, is extinguished. Hulbert v. Clark, supra; Rogers v. Murdock, 45 Hun, 30.

In Rogers v. Murdock, the point under present discussion was squarely before the court, and it was held there that a legacy is impressed with an equitable lien for the legatee's debt owing to the testator, and that, notwithstanding the bar of the statute of limitations, the executors were authorized to satisfy the debt out of the legacy. See, also, Matter of Foster, 15 Misc. Rep. 175, 37 N. Y. Supp. 36. The ratio decidendi of that case is well stated by Chancellor Walworth in Smith v. Kearney, 2 Barb. Ch. 533:

"It is against conscience that he (the legatee) should receive anything out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate. The assignees of the legatee or distributee, in such a case, take his legacy or distributive share subject to this equity, which existed against it in his hands."

Having the fund upon which the debt is a charge, there is no need of resort to any remedy to enforce payment. "Quod remedio destituitur

ipsa re valet si culpa absit." Brown, Max. 212; Bacon, Max. Reg. 9; 3 Black. Com. 20; Whart. Leg. Max. 31.

In support of their claim of a further loan by the testator to Charles F. Hoagland, the executors adduce a series of checks of divers dates after the date of the note, and of varying amounts, aggregating $5,-108.45, each check having been made by the testator to Charles F. Hoagland's order, and indorsed by the payee. These checks are shown, severally, to have been paid in due course. Presumptively, the checks last alluded to represent payments to Charles F. Hoagland, or were given him in exchange for money (2 Daniel, Neg. Inst. § 1644; 2 Pars. Notes & Bills, 84; Nay v. Curley, 113 N. Y. 575, 21 N. E. 698; Matter of Baldwin, 11 App. Div. 551, 42 N. Y. Supp. 642; Grafing v. Heilmann, 1 App. Div. 260, 37 N. Y. Supp. 253; Griffin v. Train, 90 App. Div. 16, 85 N. Y. Supp. 686; Poucher v. Scott, 33 Hun, 223; Huntzinger v. Jones, 60 Pa. 170; Connelly v. McKean, 64 Pa. 118); and the burden of proving their several accounts to have been loans by the testator devolves upon the executors. It is to be remembered, however, that the presumption is one of fact, a mere rule of argument, proceeding from convenience, the common experience being that a check drawn upon a bank of deposit is much more frequently a means of payment than otherwise; and the presumption is overcome by proof of circumstances from which it may fairly and reasonably be inferred that the transaction was in fact a loan. Greenl. Ev. (Redf. Ed.) § 44; Hamman, Ev. § 12; Nay v. Curley, 113 N. Y. 575, 21 N. E. 698. "Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." Mocowik v. Kansas City, etc., R. Co., 196 Mo. 550, 94 S. W. 256. They "are indulged to supply the place of facts. They are never allowed against ascertained and established facts. When these appear, presumptions disappear." Lincoln v. French, 105 U. S. 614, 26 L. Ed. 1189.

Charles F. Hoagland's note for $10,000 is shown to have been preceded by a number of the testator's checks to the former's order, which in amount aggregated the precise amount of the note; the last of the checks bearing even date with the note and its amount being just enough to round out the amount of the latter. It is fairly inferable from this, nothing appearing to the contrary, that the note was given to cover prior loans. Here, then, we have the fact that Charles F. Hoagland was a borrower from the testator. It is also shown that Charles F. Hoagland was more or less pecuniarily distressed; that he he was possessed of little or no available means; that his income was wholly derived from his earnings as a salesman, when employed; that, residing at some distance from this city, he was enabled to attend the probate of the testator's will only by moneys loaned or advanced to him by his attorney for that purpose; and that, almost immediately after the testator's death and the probate of the will, he secured from one John J. Martin an advance of $8,500, to whom, in payment, he sold and transferred a fractional part of his interest under the testator's will. The testator was a person of great wealth and not likely to be a borrower; and there is nothing to show that Charles F. Hoagland was, at any time, employed by the testator for any purpose, that he at any time acted for the testator in any capacity, that he at any time

had any transaction with the testator out of which an indebtedness to himself could have arisen, that he had ever received a gift from the testator, or that his relations to the testator were such as to suggest any probability of the latter's bounty. The absence of every such fact, taken in connection with the facts which do appear, and the improbability that the testator, while himself a creditor of Charles F. Hoagland upon the note, would make actual payments to the latter, instead of crediting him upon the indebtedness, or that he would make a gift while preserving the debt intact, repels any presumption that the later checks represent payments or gifts, and is persuasive that, like the earlier checks, the later ones also represent loans.

True, this conclusion proceeds from circumstantial evidence only; but that is unavoidable, since death has closed the lips of the testator, and the law has sealed those of the recipient of the checks. That such is the nature of the evidence, however, does not infirm the conclusion. "Courts, in weighing evidence and reaching conclusions," says Judge Earl, in N. Y. & B. Ferry Co. v. Moore, 102 N. Y. 667, 6 N. E. 293, "do not deal with possibilities, but with probabilities. It may be that in reaching a conclusion a mistake has been made; but mistakes cannot be eliminated from the administration of justice by human tribunals. No more certainty in proof should be required than is ordinarily practicable. In civil trials the party having the affirmative must make out his case by a preponderance of the evidence. The competent proof which would ordinarily satisfy a reasonable person should satisfy a court and justify its judgment." Certainly the evidence in the case at bar is not less persuasive than that in Stimson v. Vroman, 99 N. Y. 74, 81, 1 N. E. 147, in which the inference of a loan was maintained.

The question arises, upon the answer of the defendant John J. Martin, whether in constituting Charles F. Hoagland one of the residuary legatees, the testator forgave his indebtedness. The will does not so provide in express terms, and its context is not in conflict with the testator's expectancy of payment so far as Charles F. Hoagland's share of the residuary estate is concerned. To authorize a finding that the indebtedness is extinguished, it must affirmatively appear, directly or by fair inference, that the testator intended to discharge the legatee from payment; otherwise, the indebtedness remains unimpaired. Preservation of evidence of the legatee's indebtedness, uncanceled, as in the case at bar, has always been held to be strong evidence that the testator did not intend to release the debt (10 Am. & Eng. Encyc. of Law [2d Ed.] 777, and cases cited in the notes); and there is no inconsistency between Charles F. Hoagland's appointment as one of the residuary legatees and the collection of the debt. I must hold, therefore, that Charles F. Hoagland's indebtedness is recoverable by the executors out of his share of the residuary estate.

Interest upon Charles F. Hoagland's aggregate indebtedness is chargeable against him from the time the several items thereof matured (Brainard v. Jones, 18 N. Y. 35; Hamilton v. Van Rensselaer, 43 N. Y. 244) until one year after the time of the issuance of letters testamentary to the executors. As has already been noted, the legatee's indebtedness to the testator is equitably available to the executors as a part of the fund out of which all the legacies are payable. See, also,

an equitable set-off. Smith v. Felton, 43 N. Y. 419; Matter of Hatch, 155 N. Y. 401, 50 N. E. 49, 40 L. R. A. 664; Scott v. Armstrong, 146 U. S. 507, 13 Sup. Ct. 148, 36 L. Ed. 1059. By withholding payment of what is owing from him, Charles F. Hoagland has to that extent preferred himself in payment, since his legacy, as a residuary legatee, was not payable until after the expiration of one year from the date of the issuance of letters testamentary; the common-law rule that a legacy, in the absence of a testamentary provision to the contrary, draws interest from the lapse of one year after the testator's death (6 Am. & Eng. Ann. Cases, 525, 526, cases in note) having been abrogated by the provisions of the Code of Civil Procedure. Code Civ. Proc. § 2721; Matter of McGowan, 124 N. Y. 526, 26 N. E. 1098; Interest on Legacies, 16 N. Y. Ann. Cases, 186, note.

An attorney's lien is of two kinds, general and particular. The general lien attaches to every species of property belonging to the client and which has come to the attorney's possession in the course of his employment. It is founded upon possession, and is generally unassignable. Sullivan v. City of New York, 68 Hun, 544, 22 N. Y. Supp. 1041. The particular lien attaches to a fund or other property, made through the attorney's efforts (Attorney General v. North Am. L. Ins. Co., 93 N. Y. 387; Internal Imp. Fund Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Weeks, Attorneys, § 369), in the action or proceeding in which the recovery was had. Code Civ. Proc. § 66. Such a lien is, however, confined to the services and disbursements in that action or proceeding (Williams v. Ingersoll, 89 N. Y. 509), and must be measured by the value of the particular services and the reasonableness of the particular disbursements (Ward v. Craig, 87 N. Y. 550, 561; Rooney v. Second Ave. R. R. Co., 18 N. Y. 368). A lien for services and disbursements in a particular action or proceeding cannot be asserted against the recovery in another action or proceeding. Brown v. City of New York, 11 Hun, 21. Mr. Boyd's claim of a lien is comprised of a claim of several liens, for services performed and disbursements made at Charles F. Hoagland's request in divers actions and proceedings and at divers times, and for money loaned to his client. Some of the services related wholly to his client's domestic affairs, and did not affect the fund sought to be distributed. His lien is not asserted upon any express agreement therefor, and reliance in that respect is had wholly upon the relation of attorney and client. The aggregate value of all his services, the disbursements and the loans, is testified to by Boyd as being $1,762.70; but, specifically, the testimony shows only the value of his services in the proceedings leading to the probate of the will, $150, and the value of his services and disbursements in the executors' arrested proceedings for the judicial settlement of their accounts, $361.17, a total of $511.17; and in these two accounts, severally, I adjudge him to be entitled to particular liens upon the fund awaiting distribution.

The claim of a lien for money loaned is obviously untenable; and, while it may well be that other portions of the whole amount claimed by Boyd for services and disbursements in the several actions or proceedings involving the testator's estate accrued before or intervening some of the assignments hereinafter alluded to, the evidence affords

no basis for so finding, or fixing the value of any such portions. Mr. Boyd's retainer in the probate proceedings, having accrued before either of such assignments was made, is entitled to preference over the assignees in the payment of the amount of his lien for services in that proceeding. Unlike the attorney's general or possessory lien, the particular lien is generally assignable; that is to say, it is assignable where the assignment carries with it no breach of the attorney's duty to preserve his client's confidence inviolate. United States v. Gillis, 95 U. S. 412, 24 L. Ed. 503. As was said by Mitchell, J., in Sibley v. County of Pine, 31 Minn. 201, 202, 17 N. W. 337:

> "There being nothing in the lien right in the nature of a personal trust, there is no distinction between an attorney's lien upon a judgment and the lien of a mechanic or a materialman. Where the lienholder is intrusted, as a personal trust, with the property bound by the lien, as would be the case where the papers of a client have come into the possession of his attorney in the course of his professional employment, an entirely different case would be presented, which we do not now consider."

See, also, Delaware County v. Diebold Safe & L. Co., 133 U. S. 473, 10 Sup. Ct. 399, 33 L. Ed. 674; Beall v. White, 94 U. S. 382, 386, 24 L. Ed. 173; 4 Cyc. 1005, notes 39, 40; 2 Am. & Eng. Encyc. of Law (2d Ed.) 1051; 22 Civ. Proc. 281, note.

"In this regard," says the learned author of Jones on Liens, § 992, "there is no distinction between an attorney's lien and the lien of a mechanic or materialman. There is nothing in public policy, nor in the policy or language of the statutes creating these liens, which forbids the assignment of them. To take away their assignability would be to take away a part of their value."

I adjudge the assignment of the liens to Kerr to be valid.

Charles F. Hoagland from time to time sold fractional parts of his share of the testator's estate and made assignments thereof as follows: To John J. Martin, $8,500, by an instrument dated July 8, 1904, and recorded in the office of the Surrogate's Court of New York county September 7, 1904, notice thereof having been given to the executors on July 11, 1904; to Ellen B. Hill, $1,400, by an instrument dated February 2, 1905, unrecorded, notice thereof having been given to the executors on February 14, 1905; to Ellen B. Hill, a further $840, by an instrument dated February 19, 1906, also unrecorded, notice thereof having been given to the executors on April 9, 1906; to Mahlon Hoagland, $950, with interest from December 14, 1906, by an instrument dated December 14, 1906, recorded October 2, 1907, notice thereof having been given to the executors on October 19, 1907; to the Third National Bank of Buffalo, $500, by an instrument dated January 5, 1907, and recorded December 18, 1907; to the same, a further $2,500, by an instrument also dated January 5, 1907, and recorded December 18, 1907; and to Frank D. Hearn, $31.35, by an instrument dated the 13th day of September, 1907, recorded November 4, 1907, notice thereof having been given to the executors September 13, 1907. It is to be noted that only the assignments to Mahlon Hoagland carry interest on the amount assigned; and I have mentioned the dates on which notice of the assignments to John J. Martin, Ellen B. Hill, Mahlon Hoagland, and Frank D. Hearn was given to the executors

only because counsel seem to have considered the fact of such notice of some importance. Its only office, however, was to guard against payment by the executors to the assignor, or others claiming under him, in ignorance of earlier rights, since the several assignments became effective by delivery without such notice. Muir v. Schenck, 3 Hill, 228, 38 Am. Dec. 633; Williams v. Ingersoll, 89 N. Y. 508; Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 6 L. R. A. 475, 58 Am. Rep. 490; Id., 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475; Fortunato v. Patten, 147 N. Y. 277, 283, 41 N. E. 572.

The act, however, which provides for the recordation of transfers of interests in the estates of deceased persons (Laws 1904, p. 1690, c. 692) invalidates an earlier unrecorded transfer as to subsequent transferees in good faith; that is, to say, transferees without notice of earlier rights (Dickerson v. Tillinghast, 4 Paige, 218, 220, 25 Am. Dec. 528; Farmers' L. & T. Co. v. Hendrickson, 25 Barb. 485, 489; Tyler v. Strang, 21 Barb. 198, 202; Milton v. Boyd, 49 N. J. Eq. 142, 153, 22 Atl. 1078; Sayre v. Hewes, 32 N. J. Eq. 652, 655) and the transfers to whom shall be first duly recorded. Presumptively those claiming under recorded transfers are transferees in good faith as against transfers earlier in time, but unrecorded, or of later record; and the burden, therefore, is upon him who claims under an unrecorded transfer, or one of later record, in hostility to one later in time, but first recorded, to show that the latter was taken with notice, on the part of the transferee thereunder, of the earlier one. Brown v. Volkening, 64 N. Y. 76, 82.

Accordingly, the order in which the several assignees of Charles F. Hoagland should be paid out of the fund in the executors' hands is as follows: John J. Martin, $8,500; Frank D. Hearn, $31.35; Ellen B. Hill, $2,240; Mahlon Hoagland, $950 and interest; the Third National Bank of Buffalo, $3,000. Both Mahlon Hoagland and the bank knew, at the time of the transfers to themselves, respectively, of the earlier unrecorded transfers to Ellen B. Hill; and as to her, therefore, neither Mahlon Hoagland nor the bank can be said to have been a transferee in good faith. That the bank had such notice through its president appears from the testimony of Mr. Boyd to that effect, and notice to Mahlon Hoagland appears from the assignor's affidavit which is annexed to the assignment to him. This affidavit was specifically ruled out as against the bank, but the record is not clear that it was admitted against the defendant Mahlon Hoagland's executor. I have considered it, since it was submitted and is before me and referred to by counsel; but, should counsel be unable to agree upon the fact of its admission, the case may be reopened for the purpose of disposing of the question.

The Boyd lien for services and disbursements in the arrested accounting proceeding attaches, of course, only to what may be left of Charles F. Hoagland's share after the several assignees have been paid. It requires no discussion to show that Boyd, in that respect, could acquire a lien only upon such interest in the testator's estate as his client had when that proceeding was instituted and he was therein retained, and at those times the several assignments hereinbefore alluded to had become operative. Boyd then knew of the several assign-

ments, since the assignees were severally made parties to the proceeding.

The decision herein should be settled on notice.

Judgment accordingly.