ROBERT S. BRIGHT, EXECUTOR, *v.* WALTER J. KELLEY, ADMINISTRATOR

[No. 81, October Term, 1934.]

108

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, and SLOAN, JJ.

*V. Calvin Trice* and *William N. Andrews,* with whom was *J. C. Davis, Jr.,* on the brief, for the appellant.

*Theodore L. Harrison,* with whom were *Henry Lloyd, Jr.,* and *Hardy, Stancliffe & Hardy,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the plaintiff in an action of assumpsit brought in the Circuit Court for Dorchester County by Walter J. Kelley, ancillary administrator of the estate of Edward A. Kelley, late of the City of New York, deceased, against James G. Darden, of Cambridge, Maryland, to recover $25,000 alleged to have been loaned to the defendant by the plaintiff's intestate.

The two men, Darden and Edward A. Kelley, were friends of long standing, a friendship which continued until Kelley's death on May 31st, 1930. On August 19th, 1929, Arthur L. Carns, a New York stockbroker, drew a check for $15,000 to the order of Arthur A. Moench, an employee of Carns, who indorsed it to Darden, who deposited to his credit with the Fidelity Trust Company of Baltimore. On September 14th, 1929, Carns drew a check for $2,500 to the order of Darden, which was also deposited to the credit of Darden. Both checks were paid and charged to Kelley, who carried an account with Carns. On February 7th, 1930, Kelley drew his own check to Darden for $2,000, and that, too, was deposited to the credit of Darden and paid.

After the death of Edward A. Kelley, Walter J. Kelley, his brother and the administrator of his estate, asserted that Darden was indebted to the intestate for the money which he had received on those three checks, on the theory that it had been loaned to him. Darden ignored the claim, and on July 16th, 1932, Walter J. Kelley, as administrator of Edward A. Kelley's estate, brought this action

to enforce it. Pending the suit, on November 19th, 1933, Darden died, and Robert S. Bright, the executor of his will, was made a party defendant in his place and stead.

On October 10th, 1933, Henry Lloyd, Jr., attorney for the plaintiff, served upon William N. Andrews, attorney for the defendant, a notice addressed to Darden, informing him that the plaintiff would "take the depositions of 'Arthur Moench,' before George T. Baker, a Notary Public of the State of New York, at Suite 1940, No. 30 Church Street, Borough of Manhattan, New York City, in New York State, at 3:45 o'clock P. M. on the 25th day of October, 1933." On November 7th, 1933, "papers under seal from George T. Barker, Notary Public," were received and filed by the clerk. On May 3rd, 1934, a motion *"Ne Recipiatur* as to filing of depositions and affidavit of Notary by Plaintiff" was filed. On May 3rd, 1934, an affidavit of the notary public was received and filed. The motion was overruled, the defendant pleaded the general issue, issue was joined short, and the case tried before a court and jury. The verdict of the jury was for the plaintiff, and from the judgment on that verdict the defendant appealed.

The record presents eleven exceptions, of which the first relates to the act of the court in overruling defendant's motion of *ne recipiatur,* the next five to rulings on questions of evidence, the seventh to the refusal of the defendant's demurrer prayer, the eighth in part to the granting of the plaintiff's second, fourth, and sixth prayers, the eighth, ninth and tenth to the overruling of defendant's special exceptions to those prayers, and the eleventh was a mere repetition of the seventh, eighth, ninth, and tenth exceptions.

The deposition which is the subject of the first exception was taken in a wholly irregular manner and would no doubt have been excluded had a proper motion been made. The notice given in intended compliance with Code, art. 35, sec. 17, stated that the deposition would be taken before "George T. Baker," a notary public of the State of New York, whereas it was returned by "George

T. Barker"; the act requires that the deposition shall be duly certified under the hand and seal of the officer taking the same, but there is nothing in the record to indicate that Baker, or Barker, or any other notary or officer certified the depositions, although Barker did, after the deposition was returned, make an affidavit, which some six months later was filed in the clerk's office, that Moench signed and swore to it in his presence, although he does not state whether the oath was taken before him or another. If there was a written motion, the record fails to disclose it, and the only grounds alleged as a basis for any motion, whether oral or written, are found in a rambling colloquy between court and counsel, in which the only reasons suggested in support of the motion were that the stenographer who transcribed the deposition was not sworn, and that at the time it was taken the defendant was ill, in a state of coma, and mentally incompetent. Whether the stenographer was sworn or not was without any legal consequence. If the witness was sworn and signed the deposition, and the officer who took it certified it, nothing else was required to make it admissible in evidence to the same extent as the evidence contained in it would have been had the deponent testified to it in the case in the court in which it was tried. If it was not so authenticated, the mere fact that the stenographer who transcribed it was sworn would not have made it admissible.

As to the second objection, that the defendant was mentally and physically incompetent when it was taken, it is sufficient to say that there was no effort to support that suggestion by proof. And since those were the only objections made in the trial court to its admissibility, it will be assumed that all others were waived, and that the deposition was properly admitted.

The single issue in the case was whether Darden, during his lifetime, was indebted to Edward A. Kelley. One of the questions asked Moench was whether he was ever indebted to Darden, and over objection his answer to that question was allowed. The ruling was improper, because

it was immaterial whether Moench was or was not indebted to Darden, but it is not apparent how the appellant was injured by the ruling.

Walter J. Kelley, the administrator, the plaintiff in the case, was sworn on his own behalf, and in the course of his examination in chief was asked, "Did your brother ever owe any money to James G. Darden?" An objection to the question was overruled, and the witness answered, "No." That ruling was flatly in the teeth of the statute, and the error was highly injurious. Indeed, that testimony was relied upon to bring the case within the case of *Nay v. Curley,* 113 N. Y. 575, 21 N. E. 698, upon which the plaintiff largely relied to take it to the jury. This is an action by an administrator against an executor and is based upon transactions between their respective decedents. The witness was also the plaintiff and his testimony was as to those transactions and could have related to nothing else if it was in any sense material or relevant. It should therefore have been excluded and the ruling in respect to it was both erroneous and reversible.

The rulings involved in the fourth, fifth, and sixth exceptions are free from error and require no special comment.

The seventh exception relates to the refusal of the defendant's only prayer, which was a demurrer to the evidence. Its eighth is to the granting of defendant's second, fourth, and sixth prayers, which in effect instructed the jury that if they found that Edward A. Kelley had advanced or loaned to Darden the sums received by him on the three checks described above, their verdict should be for the plaintiff for such sums. It also involved the action of the court in overruling special exceptions to the plaintiff's second prayer. Its ninth and tenth exceptions relate to overruling special exceptions to plaintiff's fourth and sixth prayers. As stated, its eleventh exception merely summarized the seventh, eighth, ninth, and tenth exceptions. All of them, however, were intended to present the single question whether there was in the case evidence legally sufficient to entitle the plaintiff to re-

cover. The special exceptions were in a form repeatedly condemned by this court (*Carter's Digest,* vol. 2, pages 1276, 1277), and were not sufficient to raise that question, but it is fairly presented by the exceptions to the refusal of the defendant's prayer.

The appellee here was the plaintiff below. The burden was upon him to establish by proof that James G. Darden was indebted to Edward A. Kelley for the money which Darden had collected on the checks or had received in any of the transactions described in the declaration and the bill of particulars. If he failed to meet that burden, he also failed to make out any case which the defendant was called upon to rebut. In undertaking to meet that burden, he was aided by no presumptions, because there is no presumption of indebtedness, but he was required to prove facts which either directly showed such an indebtedness, or which permitted a rational inference of its existence.

There is, in the record, no direct proof of such an indebtedness, but the appellee's contention is that, when he proved that Darden received the checks and collected them, that a presumption at once arose from that fact alone that Darden became indebted to Kelley for the money thus received. But there is no such presumption, on the contrary, so far as there is any presumption at all, it is that the checks were given in payment of a debt and not as a loan.

In a note to *Leask v. Hoagland,* 235 N. Y. 171, 98 N. E. 395, Ann. Cas. 1913D, page 1203, it is said: "It is undoubtedly the general rule that in the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as a loan. *Boswell v. Smith,* 6 C. & P. 60, 25 E. C. L. 282; *Pearce v. Davis,* 1 M. & Rob. (Eng.) 365; *Park v. Miller,* 27 N. J. Law, 338; *Poucher v. Scott,* 98 N. Y. 422, affirming [*Id.*] 33 Hun, 223; *Stimson v. Vroman,* 99 N. Y. 74, 1 N. E. 147; *Nay v. Curley,* 113 N. Y. 575, 21 N. E. 698; *Mills v. McMullen,* 4 App. Div. 27, 38 N. Y. S. 705, 707; *Matter of Baldwin,* 11 App. Div. 551, 42 N. Y. S. 642; *Gaylord v. Gibson,* 36 App. Div. 548, 55 N. Y. S. 670;

*Griffin v. Train,* 90 App. Div. 16, 85 N. Y. S. 686; *Gutman v. Wolfsohn* [Sup.] 107 N. Y. S. 546; *Bougher v. Conn,* 17 Phila. (Pa.) 81, 42 Leg. Int. 120; *Flemming's Excrs. v. McClain,* 13 Pa. 177; *Masser v. Bowen,* 29 Pa. 128; *Huntzinger v. Jones,* 66 Pa. 170; *Terry v. Ragsdale,* 33 Grat. (Va.) 342; *McVeigh's Admr. v. Chamberlain,* 94 Va. 73, 26 S. E. 395. See *Aubert v. Walsh,* 4 Taunt. (Eng.) 293; *Egg v. Barnett,* 3 Esp. (Eng.) 196; *Patton's Admrs. v. Ash,* 7 Serg. & R. (Pa.) 116." Or, as stated in *Park v. Miller,* 27 N. J. Law, 338, 343: "When one gives his check to another upon his banker, the *prima facie* presumption is that it was for money due, but the contrary may always be shown either by written or parol evidence. The check, on its face, is a mere order to another to pay money; it does not, by its terms, settle the question whether the money is to pay a debt or is a loan. The presumption that it was for a debt arises like many other presumptions, from the ordinary course of business; it puts the party to show that in the case in hand the ordinary course of business was departed from." To the same effect is a statement in *Cary v. Gerrish,* 4 Esp. 9, 176 Eng. Rep. 624, where the plaintiff produced a draft drawn by the testator payable to the defendant and collected by him. It was contended that that was sufficient to show a loan, but Lord Kenyon, in nonsuiting the plaintiff, said: "This is no evidence to establish a debt. No evidence is offered of the circumstances under which the draft was given; it might be in payment of a debt due by the testator; or the defendant might have given cash for it at the time. From the circumstances of the defendant's name being used in the body of the draft, no inference can be drawn; it is perfectly arbitrary what name is used in drawing a draft on a banker; a man uses the name which first occurs to him; if the plaintiff had shown any money transactions between the defendant and the testator, from whence a loan could be inferred, or any application by the defendant to borrow money at the time,—that, coupled with the giving of the draft, might be evidence to go to the jury,—but standing a naked transaction, as

it does, it is not evidence." Cases supporting those statements are collected in notes to sections 18 and 19 of the article on "Money Lent," 41 *C. J.* 6 and 7.

Of course, as stated in *Nay v. Curley,* 113 N. Y. 575, 21 N. E. 698, 699, the delivery of a check may represent a loan, or a gift, or money to be applied for the use of the drawer, but, as stated in the same opinion: "It is conceded, and it is undoubtedly the general rule, that in the absence of explanation the presumption arising from the delivery of a check is that it was delivered in payment of a debt, and not as a loan. *Koehler v. Adler,* 78 N. Y. 287; *Poucher v. Scott,* 98 N. Y. 422."

Turning again to the record, and without referring in detail to the evidence, it is sufficient to say that there is literally nothing in it which tends in any way to explain why the checks were delivered to Darden. The only evidence which would have had that effect was the statement of the administrator that his brother, Edward A. Kelley, never owed Darden any money. If that was a fact, it would have furnished some support for an inference that the checks represented a loan or a gift, or were to be applied in some manner for Kelley's use, but, for reasons already stated, that evidence was improperly admitted and cannot be considered.

Appellee offered a letter, apparently for the purpose of aiding an inference that the transactions were loans, but it was no more susceptible of that construction than that it was a request for the payment of a debt. A creditor might well, to soften the rigor of such a demand, say that he needed the money. So much of the letter as relates to that issue at all reads as follows: "Dear Ed: Here I am at Cambridge feeling pretty good, but not so well. I try to forget all, but that's impossible. I wish the Stock Market would begin to move. I need some cash, very, very much. Even two thousand dollars would do until June. Maybe then business will recover. I do hope that you get in fine shape and have good time. Would like to be with you but that is out of the question, so must not look forward to it. If I had not purchased this property I would

be ? Have spent right much money but my property and house and furnishings are worth $100,000. Have put in now $72,000 and Three Thousand more will cover all I hope." The letter is nothing more than the intimate disclosure by one friend to another of his troubles, his needs, and his hopes. He said that he needed $2,000, which may have been true, but he made no suggestion that the friend lend him that amount.

It is true that, some days after that letter was received, Kelley did send Darden $2,000, and it is possible that he interpreted Darden's letter as a request for a loan. But such an inference would be wholly speculative and conjectural, and far too uncertain to furnish any legal basis for an inference that the checks represented a loan. It is quite as consistent with its language to infer that it suggested the payment of a debt, as that it requested a loan, although it necessarily suggested neither. Darden as well as Kelley was a man of means, so that the financial condition of neither threw any light upon the question as to whether, when Darden said that he "needed" $2,000, he meant to ask for a loan, or to suggest the payment of a debt, or merely to state a fact which he thought would be of interest to his friend. And since that letter was not sufficient to support the inference that the checks represented loans, and as there was no other evidence in the record to explain why they were delivered to Darden, it follows that the defendant's prayer should have been granted. The judgment appealed from will therefore be reversed.

*Judgment reversed, with costs.*